In the Matter of the Will of CHARLES F. FOWLES, Deceased. DOROTHY E. SMITH et al., Appellants; GERTRUDE F. BROWNE et al., Respondents.

**Will — simultaneous death of testator and his wife — provision of will that testator should be deemed in such an event to have predeceased his wife — power of appointment to testator's wife — bequest by testator's wife under such appointment held valid although testator and his wife were lost at sea and it is not known who was the survivor.**

This controversy over the will of testator grows out of the ninth article which reads as follows: " In the event that my said wife and myself should die simultaneously or under such circumstances as to render it impossible or difficult to determine who predeceased the other, I hereby declare it to be my Will that it shall be deemed that I shall have predeceased my said wife, and that this my Will and any and all its provisions shall be construed on the assumption and basis that I shall have predeceased my said wife." The testator, by the eighth article of his will, gave part of his residuary estate in trust for his wife for life, and authorized her to dispose of part of said share by her will. Husband and wife were lost at sea on May 7, 1915, with the steamship *Lusitania*. There is nothing to show which was the survivor. The wife left a will made at the same time as the husband's. She recites the power of appointment, and undertakes to execute it. She gives her residuary estate (including the property affected by the power) to trustees for the use of a sister during life with remainder over. *Held*, that this gift in its application to the husband's estate is made valid and effective by the ninth article of his will. The legacies to the testator's wife under the third and fourth provisions of the will pass to the executors of the wife by virtue of the same clause. (*Matter of Piffard*, 111 N. Y. 410, 414, 415, followed.)

*Matter of Fowles*, 176 App. Div. 637, reversed.

(Argued November 15, 1917; decided January 8, 1918.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 23, 1917, which reversed a decree of the New York County Surrogate's Court construing the will of Charles F. Fowles, deceased.

The facts, so far as material, are stated in the opinion.

*Charles F. Brown* and *Seldon Bacon* for Dorothy E. Smith, appellant. As to the legacies of $5,000 and of the Fairmile Court personalty, the intent of the testator that these should not lapse under the circumstances of uncertain survivorship that have arisen, but should survive and be paid over to Mrs. Fowles' executors, is fully declared in the 9th clause, and is clearly operative, whatever difficulties may be found to affect the provisions affecting the twenty-two and one-half per cent of the residue. (*Sibthorp* v. *Moxom*, 1 Ves. Sr. 49; *Rivers* v. *Rivers*, 36 S. C. 302; *Turner* v. *Martin*, 7 De G., M. & G. 429; *Davis* v. *Taul*, 6 Dana [Ky.], 51; *Kimball* v. *Story*, 108 Mass. 382; *St. John* v. *Andrews Inst.*, 191 N. Y. 254.) The 9th paragraph of the will is valid and the directions contained therein are binding upon the executor and all persons interested in the testator's estate. (*St. John* v. *Andrews Inst.*, 191 N. Y. 267; *Masterson* v. *Townshend*, 123 N. Y. 462; *Goebel* v. *Wolf*, 113 N. Y. 412; *Miller* v. *Gilbert*, 144 N. Y. 73.) The power granted to Mrs. Fowles to dispose of the twenty-two and one-half per cent of the residuary estate of Mr. Fowles by her last will and testament duly executed was duly and lawfully executed by her. (*Hirsch* v. *Bucki*, 162 App. Div. 659; Chaplin on Express Trust Powers, § 627; *U. S. Trust Co.* v. *Chauncey*, 32 Misc. Rep. 358; *Cutting* v. *Cutting*, 86 N. Y. 522; *Matter of Piffard*, 42 Hun, 34, 37.) The bequest to his own trustees to pay over to beneficiaries named in Mrs. Fowles' will and pursuant to the directions therein contained is, even although Mrs. Fowles died first or simultaneously with the testator, a valid bequest to the trustees and the trust will be enforced. Such a bequest does not contravene the rule against incorporating by reference provisions of a testamentary character contained in an extraneous instrument. (*Jay* v. *Lee*, 41 Misc. Rep. 13; *Gross* v. *Moore*, 68 Hun, 412; 141 N. Y. 559.)

*Egerton L. Winthrop, Jr.,* for Kenneth C. Smith, appellant. The court should carry into effect the testator's intention, if this can be done, without contravening any established rule of law. (*Du Bois* v. *Ray,* 35 N. Y. 166; *Butler* v. *Butler,* 3 Barb. Ch. 310; *Terry* v. *Wiggins,* 47 N. Y. 517; *Greene* v. *Greene,* 125 N. Y. 512.) The testator's intention can be carried into effect without contravening the rules (1) that a will cannot speak until the testator's death, (2) that no power of appointment can vest in the donee of the power unless, as a matter of fact, the donee is living at the death of the donor of the power, and (3) that in cases of death by common disaster where there is no evidence as to survivorship there can be no presumption as to survivorship. (*Matter of Piffard,* 111 N. Y. 410; *Matter of Peiser,* 79 Misc. Rep. 671.)

*George L. Ingraham* and *William M. Parke* for Gertrude F. Browne et al., respondents. Under the 8th clause of the testator's will the disposition of that part of the corpus of the trust consisting of one-half of forty-five per cent of his residuary estate, after the death of his wife, depended upon a valid execution of the power granted to his wife by her last will and testament, and, in the event of a failure to execute that power by his wife, the property went to his trustees for the benefit of his two daughters during their lives. (*Root* v. *Stuyvesant,* 18 Wend. 250; *Connolly* v. *Connolly,* 122 App. Div. 493; *Matter of Haggerty,* 128 App. Div. 479; 194 N. Y. 550; *Crackenthorpe* v. *Sickles,* 156 App. Div. 753.) Neither the trust established for the benefit of his wife by the 8th clause of his will nor the power of appointment by a moiety of the trust estate ever came into existence, by reason of the fact that the beneficiary of the trust and the grantee of the power did not survive the testator, and there was, therefore, a failure of the testator's wife

to make a testamentary disposition of one-half of the corpus of the trust estate. (*Rose* v. *Hatch*, 125 N. Y. 427; *Holland* v. *Alcock*, 108 N. Y. 312; *Fosdick* v. *Town of Hempstead*, 125 N. Y. 581; *Sawyer* v. *Cubby*, 146 N. Y. 192; Farwell on Powers [2d ed.], 226; *Jones* v. *Southall*, 32 Beav. 31; *Baker* v. *Hanbury*, 3 Russell, 340; *McAdam* v. *Logan*, 3 Brown Ch. 310; *Sharpe* v. *M'Call*, 1903, 1 I. R. 179; *Reid* v. *Bonshall*, 107 N. C. 345; *Curley* v. *Lynch*, 206 Mass. 289; *Matter of Mayo*, 76 Misc. Rep. 416.) The 9th clause of the will does not purport to modify the provisions of the 8th clause of the will and cannot be construed to create a power to appoint where none ever did or could exist, or to bring into the will of the testator the will of his wife and thus make her will the controlling element in the disposition of the testator's property; and there is nothing in the will that indicates, or from which the inference can be drawn, that the testator had any such intention. (*Matter of Piffard*, 111 N. Y. 410; *Central Trust Co.* v. *Eggleston*, 185 N. Y. 23; *Matter of Stewart*, 131 N. Y. 274; *Cutting* v. *Cutting*, 86 N. Y. 522; *F. L. & T. Co.* v. *Mortimer*, 219 N. Y. 290; *Langdon* v. *Astor*, 16 N. Y. 9; *Williams* v. *Freeman*, 83 N. Y. 561; *Matter of O'Neil*, 91 N. Y. 516; *Booth* v. *Baptist Church*, 126 N. Y. 215; *Matter of Emmons*, 110 App. Div. 701.)

*James W. Prendergast*, for Stevenson Scott, as trustee under the will of Charles F. Fowles, deceased, respondent. No presumption exists to the effect that Frances May Fowles, the wife of Charles F. Fowles, either predeceased him or survived him; the burden of proof as to the fact of survivorship rests upon the residuary legatees and devisees under the will of Frances May Fowles, as they are the persons who claim under her will as an instrument passing the property as to which she had power of disposition by virtue of the will of her husband. (*St. John* v. *Andrews Institute*, 191 N. Y. 254; *Newell*

15

v. *Nicholas*, 75 N. Y. 78; *Y. W. C. Home* v. *French*, 187 U. S. 401; *Matter of McInness*, 119 App. Div. 440; *Southwell* v. *Gray*, 35 Misc. Rep. 740; *Dunn* v. *N. A. Casualty Co.*, 141 App. Div. 478.) The principle established by the common law in cases in which the fact of survivorship is in question cannot be disregarded to give effect to the direction contained in the 9th paragraph of testator's will. (*Matter of Anonymous*, 80 Misc. Rep. 10.) The power conferred upon Frances May Fowles to dispose of one-half of forty-five per cent of the residuary estate of her husband by virtue of the provisions of subdivision " eighth " of his will, could be validly exercised by her only in the event that she survived her husband, and as there was no proof of such survivorship, and as effect cannot be given to the direction of the said will as to survivorship, the power failed. (1 Jarman on Wills [6th ed.], 428; *Matter of Piffard*, 111 N. Y. 410; *Matter of Mayo*, 76 Misc. Rep. 416; *Jones* v. *Southall*, 32 Beav. 31; *Sharpe* v. *M'Call*, 1903, 1 I. R. 179; *Curley* v. *Lynch*, 206 Mass. 289.) The contention that the provisions of the will of Charles F. Fowles, made in behalf of his wife may be rendered effective by incorporating the will of the latter into the will of the former, is open to the objection that the provisions of the will of the latter are plainly dispository in character, and, therefore, cannot be read into the will of the former. (*Matter of O' Neil*, 91 N. Y. 516; *Booth* v. *Baptist Church*, 126 N. Y. 215; *Matter of Conway*, 124 N. Y. 455; *Locke* v. *Rings*, 56 Hun, 428; *Martin* v. *Pine*, 79 Hun, 430; *Matter of Emmons*, 110 App. Div. 701; *Matter of Westeon*, 60 Misc. Rep. 275; *Matter of Martindale*, 69 Misc. Rep. 522; *Keil* v. *Hoehn*, 72 Misc. Rep. 255; *Matter of Piffard*, 111 N. Y. 410.)

*A. Perry Osborn* and *Stephen P. Anderton* for Marjory F. S. Browne et al., respondents. The provisions of

article "ninth" of Mr. Fowles' will would alter or evade the law, and are a nullity. (*Matter of Board of Education of N. Y.*, 173 N. Y. 321; *Matter of Smith*, 77 Misc. Rep. 76; *Matter of Benjamin*, 155 App. Div. 233; *King* v. *Paddock*, 18 Johns. 141; *Cerf* v. *Diener*, 210 N. Y. 156.) The persons named in Mrs. Fowles' will do not take by substitution. (*Matter of Wells*, 113 N. Y. 396; 1 Jarman on Wills [6th ed.], 843; *Griggs* v. *Gibson*, 35 L. J. Ch. 458; *Irish* v. *Huested*, 39 Barb. 411; *King* v. *Woodall*, 3 Edw. Ch. 79; *Kerr* v. *Dougherty*, 79 N. Y. 327.)

*Charles H. Beckett* for Columbia Trust Company, respondent. There is no presumption of law arising from age or sex as to survivorship among persons who perish by a common disaster. Nor is there any presumption of law that all died at the same time. The question is one of fact, depending wholly on evidence, and if the evidence does not establish the survivorship of any one, the law will treat it as a matter incapable of being determined. The *onus probandi* is on the person asserting the affirmative. In the absence of any proof there is an intestacy. (*Wing* v. *Angrave*, 8 H. L. Cas. 183; *Newell* v. *Nichols*, 75 N. Y. 78; *Young Women's Christian Home* v. *French*, 187 U. S. 401; *St. John* v. *Andrews Institute*, 191 N. Y. 272; *Dunn* v. *New Amsterdam Casualty Co.*, 141 App. Div. 478.) A provision in a will contrary to the principles of the common law or the operation of which would reverse a rule of construction based on those principles is illegal and invalid. (*Booth* v. *Baptist Church*, 126 N. Y. 216; *Matter of O'Neil*, 91 N. Y. 516; *Matter of Emmons*, 110 App. Div. 701; *Matter of Andrews*, 162 N. Y. 1; *Vogel* v. *Lehritter*, 139 N. Y. 223; *Matter of Conway*, 124 N. Y. 455; *Matter of Piffard*, 111 N. Y. 410; *Matter of Mayo*, 76 Misc. Rep. 417; *Curley* v. *Lynch*, 206 Mass. 289; *Condit* v. *De Hart*, 62 N. J. L. 78; *Jones* v. *Southall*, 32 Beav. 31; *Sharpe* v. *M'Call*, 1903, 1 I. R. 179.)

[222 N. Y.] Opinion, per CARDOZO, J. [Jan.,

CARDOZO, J.  The will of Charles Frederick Fowles, made on April 29, 1915, is before us for construction. By the second article of the will he gave to his wife, Frances May Fowles, $5,000.  By the fourth article he gave her the contents of his estate " Fairmile Court." By the eighth article he gave his residuary estate to trustees to divide into three parts, the first part to consist of forty-five per cent thereof, and each of the other parts to consist of twenty-seven and one-half per cent thereof.  The income of the first part was to be paid to his wife during her life, and upon her death the trust was to cease and the corpus to be divided.  Half of the corpus ($22\frac{1}{2}$ per cent of the entire residue) was to be paid by the trustees " pursuant to the provisions of such last will and testament as my said wife may leave (hereby conferring upon my said wife the power to dispose of the said one-half by last will and testament duly executed by her)."  If she failed to execute the power, the corpus was to be held in trust for his daughters by a former wife, with remainder to their children.  To them also were given upon like trusts, and with like remainders, the other shares of the residue.

These provisions are not obscure, and their validity is not doubtful.  The controversy grows out of the ninth article which reads as follows:  " In the event that my said wife and myself should die simultaneously or under such circumstances as to render it impossible or difficult to determine who predeceased the other, I hereby declare it to be my Will that it shall be deemed that I shall have predeceased my said wife, and that this my Will and any and all its provisions shall be construed on the assumption and basis that I shall have predeceased my said wife."

Husband and wife were lost at sea on May 7, 1915, with the steamship *Lusitania*.  There is nothing to show which was the survivor.  The wife left a will made at

the same time as the husband's. She recites the power of appointment, and undertakes to execute it She gives her residuary estate (including the property affected by the power) to trustees for the use of a sister during life with remainder over. Whether this gift in its application to the husband's estate is made valid and effective by the ninth article of his will is the chief question to be determined.

Of his intention, there can be no doubt. In that, we all agree. He was about to set sail with his wife upon a perilous journey. He knew that disaster was possible. He knew that if death came, there would be no presumption to whom it had come first (*Newell* v. *Nichols*, 75 N. Y. 78; *St. John* v. *Andrews Institute*, 117 App. Div. 698; 191 N. Y. 254). He told the courts what he wished them to do if all other tests of truth should fail. They were to distribute his estate as they would if his wife were the survivor. We cannot know whether she was in truth the survivor or not: there is no break in the silence and obscurity of those last hours. The very situation which was foreseen has thus arisen. If intention is the key to the problem, the solution is not doubtful. We are now asked to hold that under the law of the state of New York, a testator may not lawfully declare that a power executed by one who dies under such conditions shall be valid to the same extent as if there were evidence of survivorship.

Two rules of law are supposed to stand in the way. One is the rule that a power created by will lapses if the donee dies before the will takes effect. The other is the rule that wills must be executed in compliance with statutory formalities, and are not to be enlarged or diminished by reference to extrinsic documents which may not be authentic. A testator is not permitted at his pleasure to violate these rules. He does violate them, it is said, by indirection, if he may dispense with

evidence of survivorship and still sustain the gift which
purports to execute the power. If the wife had sur-
vived a single second, the gift would certainly be valid.
That would be so though she had signed her will while
her husband was yet alive and before the power took
effect (*Stone* v. *Forbes*, 189 Mass. 163, 168; *Airey* v.
*Bower*, 12 A. C. 263; *Hirsch* v. *Bucki*, 162 App. Div. 659,
665). It is possible that she did survive, but it is also
possible that she did not. The latter possibility, it is
said, renders the gift void. We do not think it does.

It is true that a power created by will lapses if the
donee of the power dies before the maker of the will
(*Curley* v. *Lynch*, 206 Mass. 289; Sugden on Powers
[8th ed.], 460; Farwell on Powers [2d ed.], p. 226). That is
because a will has no effect till the death of the testator.
Whatever power it creates, comes into being at that
time. But to say this, does not answer the question
before us. The question is not whether this power of
appointment lapsed. The question is whether the
testator has avoided the consequences of a lapse. More
concretely, it is whether the law permits him to provide
that if the donee's survivorship is incapable of proof,
he will give his estate none the less to whomever she has
named. That is what this testator said, not in words,
but in effect. His will in this respect has a parallel in
the one construed in *Matter of Greenwood* (1912, 1 Ch.
Div. 392). There gifts were made to relatives, with the
provision that if the legatees died leaving issue, the benefits
of the gifts should not lapse, " but should take effect as
if his or her death had happened immediately after
mine." These words were held equivalent to a gift to
the personal representatives of the legatees named. So
here, there is by implication a gift to the legatees named
by the wife, and a ratification of any execution of the
power, however premature. The intent to avert the
consequences of a lapse is clear. The only question is

whether the intent is one to which the law will give effect. One obstacle, and one only, can be thought of. That is the rule against the incorporation of extrinsic documents, testamentary in character but not themselves authenticated in accordance with the statute. It is said that this rule is violated when a testator, to keep a power alive, ratifies its execution, adopts the will which executes it as his own, and thus in effect averts a lapse. We do not share that view.

Everything that this testator did is justified by our decision in *Matter of Piffard* (111 N. Y. 410, 414, 415). The distinction between that case and this is purely verbal. There is none in substance. In that case the testator authorized his daughter to dispose of a share of his estate by will. If she died before him, leaving a will in execution of the power, he directed his executors to transfer the share to her executors or trustees. We upheld the validity of that provision. We said that it might not be " possible to sustain the power of appointment as such." We held, however, that the daughter's will might be referred to " not as transferring the property by an appointment, but to define and make certain the persons to whom and the proportions in which the one-fifth should pass by the father's will in case of the death of the daughter in his lifetime." There was a like decision upon like facts in *Condit* v. *De Hart* (62 N. J. L. 78). The argument is made that the express direction to transfer the share to the daughter's executors or trustees distinguishes the *Piffard* case from the one at bar. But in another form of words, this testator gave the same direction. He directed his executors to turn over his estate to the persons named by his wife. There is no distinction between a direction to pay the *trustees* named in another will, and a direction to pay the *legatees* named in a will. The daughter's trustees in the *Piffard* case were not to take as individuals. They had no beneficial

interest. They were to take as trustees. Only by reference to the will which appointed them could the nature of the trust and the names and interests of the beneficiaries be learned. If there was a violation of the rule against incorporation here, there was equally a violation there.

*Piffard's* case cannot be distinguished. It ought not to be overruled. Only the clearest error would warrant us in baffling the just hopes and purposes of this testator by disregarding a decisive precedent. But there are substantial reasons to support the view that the decision was right. The reasons may appeal with different strength to different minds. For our present purposes, it is enough that they are at least substantial. The rule against incorporation has not been set aside. It has been kept within bounds which were believed to be wise and just. The rule is sometimes spoken of as if its content had been defined by statute, as if the prohibition were direct and express, and not inferential and implied. But the truth is that it is the product of judicial construction. Its form and limits are malleable and uncertain. We must shape them in the light of its origin and purpose. All that the statute says is that a will must be signed, published and attested in a certain way (Decedent Estate Law, § 21; Consol. Laws, ch. 13). From this the consequence is deduced that the testator's purpose must be gathered from the will, and not from other documents which lack the prescribed marks of authenticity (*Booth* v. *Baptist Church of Christ*, 126 N. Y. 215, 247). It is a rule designed as a safeguard against fraud and mistake. In the nature of things, there must be exceptions to its apparent generality. Some reference to matters extrinsic is inevitable. Words are symbols, and we must compare them with things and persons and events (4 Wigmore on Ev. § 2470). It is a question of degree (*Langdon* v. *Astor's Executors*, 16 N. Y. 9, 26, 31; *Robert* v. *Corning*, 89 N. Y. 225, 242).

Sometimes the distinction is said to be between documents which express the gift and documents which identify it (*Hathaway* v. *Smith,* 79 Conn. 519, 521; *Booth* v. *Baptist Church of Christ, supra*). But the two classes of cases run into each other by almost imperceptible gradations (*Langdon* v. *Astor's Executors, supra*). One may ratify assumptions of power, extinguish debts, wipe out wrongs, confirm rights, by the directions of one's will (*Bizzey* v. *Flight,* L. R. 3 Ch. Div. 269; 1 Jarman on Wills, 99). In these and other cases, the expressions of the gift and the description of its subject-matter must often coalesce. No general formula can tell us in advance where the line of division is to be drawn.

It is plain, therefore, that we are not to press the rule against incorporation to " a drily logical extreme " (*Noble State Bank* v. *Haskell,* 219 U. S. 104, 110). We must look in each case to the substance. We must consider the reason of the rule, and the evils which it aims to remedy. But as soon as we apply that test, the problem solves itself. There is here no opportunity for fraud or mistake. There is no chance of foisting upon this testator a document which fails to declare his purpose. He has not limited his wife to any particular will. Once identify the document as *her* will; it then becomes his own. He authorizes her to act, and confirms her action (*Condit* v. *De Hart, supra,* at p. 81). For the purpose of the rule against incorporation, the substance of the situation is thus the same as it always is when a will creates a power. The substance is that a power which would otherwise have lapsed, has been kept alive by the declaration that its execution, however premature, is ratified and approved. But the execution of a power does not violate the rule against incorporation. It can make no difference for that purpose whether the execution is authorized in advance or made valid by relation. There is no greater impair-

ment in the one case than in the other of the principle of the integrity and completeness of testamentary expression. The source of title may be in one case the appointment, and in the other the confirmatory will. But if we go beneath the form and reach realities, the truth is that under the sanction of the will, a power has been executed. That is the principle which underlies the ruling in *Matter of Piffard* and *Condit* v. *De Hart*. We reaffirm it now. To hold that the purpose of this testator has been adequately or inadequately declared according to the accident of time at which death came to him or his wife in the depths of the ocean, is to follow the rule against incorporation with blind and literal adherence, forgetful of its origin, its purpose, and its true and deep significance.

We have spoken thus far of the gift of the residuary estate under the eighth article of the will. Questions also arise under the second and fourth articles. The gifts under these articles did not lapse, but passed to the personal representatives of the legatee. On that subject it is impossible to add anything to what has been written by Judge CRANE.

The order of the Appellate Division should be reversed and the decree of the Surrogate's Court affirmed with costs in the Appellate Division and in this court to be paid out of the estate.

CRANE, J. (dissenting). On the seventh day of May, 1915, Charles Frederick Fowles and Frances May Fowles, his wife by a second marriage, perished in the sinking of the *Lusitania* while on their way to England. Two days before leaving New York, and on April twenty-ninth, 1915, they went to the office of their attorneys and gave instructions in each other's presence about the drafting of their respective wills which were executed the following day before common witnesses and in each other's presence.

So far as material, Mr. Fowles' will provided as follows:

" *Second.*— I hereby give and bequeath the following legacies to the several persons hereinafter named, to wit: * * *

" (8) To my wife, Frances May Fowles, the sum of five thousand dollars ($5,000). * * *

" *Fourth.*— To my wife I give and bequeath all the personal property which may be contained at the time of my death in and upon my said estate ' Fairmile Court,' including all household furniture, furnishings, silver, silverware, books, rugs, statuary (but not including any and all oil paintings) and any and all horses, carriages, harness, motors, livestock, farm tools and implements and any and all the contents of the garages, stables, conservatories and other out-buildings, and any and all their equipment and appurtenances. * * *

" *Eighth.*— A. All the rest, residue and remainder of my estate, both real and personal and wheresoever situate (including the proceeds resulting from the sale of my stock of the Scott & Fowles Company), I direct my executors to divide into three parts or portions, the first part or portion of which shall consist of forty-five per centum thereof, and the other two parts or portions of which shall each consist of twenty-seven and one-half per centum thereof. The said first part or portion consisting of forty-five percentum of my said residuary estate (subject to the possible deduction of eight thousand two hundred and fifty pounds (8,250), as hereinafter provided), I give and bequeath to my Trustees, hereinafter named, In Trust, Nevertheless, for the use and benefit of my wife, Frances May Fowles, to hold and invest the same and to collect and receive any and all the income, interest and increment accruing thereon and the same to pay over to my said wife semi-annually and for and during each year of the full term

[222 N. Y.]        Dissenting opinion, per CRANE, J.        [Jan.,

of the life of my said wife. Upon the death of my said wife, the said trust shall cease and determine and the corpus of same I direct my said trustees to then dispose of as follows:

" One-half thereof to pay over pursuant to the provisions of such last Will and Testament as my said wife may leave (hereby conferring upon my said wife the power to dispose of the said one-half by last Will and Testament duly executed by her), and in the event that my said wife should fail to make testamentary disposition of the said one-half thereof, the same to divide into two equal portions and such two equal portions to pay over pursuant to the provisions of subdivisions ' B ' and ' C ' of this article of this my Will, one such portion passing under said subdivision ' B ' and one such portion passing under said subdivision ' C.' * * *.

" *Ninth.*— In the event that my said wife and myself should die simultaneously or under such circumstances as to render it impossible or difficult to determine who predeceased the other, I hereby declare it to be my Will that it shall be deemed that I shall have predeceased my said wife, and that this my Will and any and all its provisions shall be construed on the assumption and basis that I shall have predeceased my said wife."

Subdivisions " B " and " C " were trusts for his two daughters, Gertrude Frances Browne and Gladys Mary Baylies, by his first wife.

The will of Frances May Fowles, duly admitted to probate, contained the following provision:

" Any and all the rest, residue and remainder of my estate, real and personal and wheresoever situate (including any and all property as to which I may have power of disposition by will by virtue of the provisions of the last Will and Testament of my husband, Charles Frederick Fowles), I give and bequeath to my Trustees, hereinafter named, In Trust, Nevertheless, to hold

and invest the same for the use and benefit of my sister, Dorothy Elizabeth Smith, and to receive and collect the income, interest and increment accruing thereon and the same to pay over to the said Dorothy Elizabeth Smith in equal semi-annual installments during each year of the full term of the life of the said Dorothy Elizabeth Smith and for her sole use and benefit. Upon the death of the said Dorothy Elizabeth Smith the said trust shall cease and determine and I direct that my said trustees shall then pay over the corpus of said trust as follows: One-third thereof to Kenneth Charles Smith, the son of the said Dorothy Elizabeth Smith, or, if he should not then be living, in equal shares to the issue of the said Kenneth Charles Smith, *per stirpes* and not *per capita;* one-third thereof to my said husband's daughter, Gertrude Frances Browne, or, if she should not then be living, in equal shares to the issue of the said Gertrude Frances Browne, *per stirpes* and not *per capita;* and one-third thereof to my said husband's daughter, Gladys Mary Baylies, or, if she should not then be living, in equal shares to the issue of the said Gladys Mary Baylies, *per stirpes* and not *per capita.*"

Upon petition, under section 2615 of the Code of Civil Procedure, the surrogate determined that the legacies under paragraphs " Second " and "Fourth " of Mr. Fowles' will, together with one-half of the forty-five per centum of the residuary estate mentioned in paragraph " Eighth," passed by substitution to the executor of the last will and testament of said Frances May Fowles for the uses and purposes described therein.

The Appellate Division reversed this decree of the surrogate, holding that in default of proof that the testator's wife, Frances May Fowles, survived the testator, the legacies above mentioned became part of the net residuary estate of the testator by operation of law, and the one-half of the forty-five per centum of the net residuary

estate passed under the further provisions of paragraph " Eighth " into the trusts for the testator's two daughters.

The reasons which have been assigned in the various opinions written below need not here be discussed as it is sufficient to state the conclusions at which we have arrived and the authorities which sustain them.

As Mr. and Mrs. Fowles sank with the *Lusitania* and thus perished together, there is no legal presumption that one survived or outlived the other. The party alleging survivorship must prove it by some competent evidence. (*Newell* v. *Nichols*, 75 N. Y. 78; *St. John* v. *Andrews Inst.*, 117 App. Div. 698; 191 N. Y. 254.) But this is no more than saying that the courts are limited in knowledge of events the same as individuals; that where no one knows who died first, the courts likewise cannot determine. It is no positive rule of law; it is the lack of one: the expression is a mere declaration of a fundamental principle of our jurisprudence,— that facts must be proved. The only facts that can be proved are the sinking and death. Our law goes no further; it indulges in no fictions or presumptions. Fictions and presumptions are means to an end in the absence of proof. The necessity for the creation of a fact by the *ipse dixit* of the court has never been felt by us in cases like this.

The negation of a positive rule does not render the ninth clause void and expunge it from the will. The entire will of Mr. Fowles must be read in order to gather his intention, and no part is to be disregarded because it may be illegal. (*Tilden* v. *Green*, 130 N. Y. 29, 55.) The first essential is to determine from everything the testator said in the will what he meant should be done with his property, and then, secondly, to ascertain whether his meaning and intent can be given legal effect. A man can do as he pleases with his own unless he runs counter to some rule of law or public policy.

The bequests under the second and fourth clauses of the will are not dependent upon the validity of the bequest under the eighth clause and may be treated separately. As to these it is quite apparent that the testator intended to prevent a lapse under the conditions mentioned in the ninth clause of his will. He had given $5,000 and the personal property in England to his wife absolutely. If she died before he did, these legacies would lapse, and he, being the longer liver, could then modify his will as he chose. In case, however, he and his wife perished together, under the circumstances stated, he desired that these legacies should be paid as if his wife survived him. He, of course, knew that if they perished together she would not survive him and that the legacies could not actually be paid to her. What did he mean then by saying that he desired to have them paid as if she survived him? He must have intended that these legacies should become part of her estate and should be paid to her personal representatives. This is the only meaning that paragraph can have. " In the event," he says, " that my said wife and myself should die simultaneously or under such circumstances as to render it impossible or difficult to determine who predeceased the other, I hereby declare it to be my Will that it shall be deemed that I shall have predeceased my said wife, and that this my Will and any and all its provisions shall be construed on the assumption and basis that I shall have predeceased my said wife." In considering these two legacies it must be assumed that the testator predeceased his wife and that she took the legacies. She being dead, the intention can only be given effect by paying the legacies to her estate or to her personal representatives. The ninth paragraph cannot be disregarded altogether and this meaning, we think, is quite apparent.

In thus giving effect to the testator's intention, no rule

of law is violated, all rules of construction are observed, and the authorities in similar cases followed. The testator could have stated that in case of death under the circumstances mentioned these legacies should be paid to his wife's representatives. He has stated the same thing in a different way. It is because testators do not always express themselves as exactly and as precisely as others might have done that so much litigation arises over wills, and has forced the courts to say that the intention of the testator, when this can be gathered from the four corners of his will, must be carried out, if not contrary to some rule of law. When the testator says that it shall be deemed that he predeceased his wife, it is the same as saying that it shall be deemed that his wife outlived him and that, although she be actually dead, she shall receive the legacies. The words "executor" or "personal representative" must, under these circumstances, stand for the wife, who is actually dead. Such construction is in harmony with the ruling in many cases. (*Phillips* v. *Davies*, 92 N. Y. 199; *Matter of Piffard*, 111 N. Y. 410; *Matter of Vowers*, 113 N. Y. 569; *Woodward* v. *James*, 115 N. Y. 346; *Masterson* v. *Townshend*, 123 N. Y. 458, 462.)

Now as to the third legacy mentioned in paragraph "Eighth."

It was also the testator's intention that the legacy provided for by paragraph ".Eighth," to wit, the one-half of the forty-five per centum residuary estate, should pass as directed by his wife in her last will and testament. For this purpose the testator, in the ninth clause of his will, says, in effect, "my wife shall be deemed to have survived me and, therefore, it follows that the will which she has made will take effect and dispose of this one-half of the forty-five per centum of my residuary estate." But in this instance, while the intention is clear, it cannot be given effect for the reason that it transgresses

1918.]     Dissenting opinion, per CRANE, J.     [222 N. Y.]

the law of this state applicable to wills. Unlike the provisions mentioned above, this part of the eighth clause gives no direct legacy to Mrs. Fowles but merely a power. of appointment. No more direct or positive language could be used than that of the testator in creating this power. The words are: " Upon the death of my said wife, the said trust shall cease and determine and the corpus of same I direct my said trustees to then dispose of as follows: One-half thereof to pay over pursuant to the provisions of such last Will and Testament as my said wife may leave (hereby conferring upon my said wife the power to dispose of the said one-half by last Will and Testament duly executed by her)."

A power such as this can only be exercised by one who survives the testator. It cannot be executed in his lifetime. Mrs. Fowles could only exercise this power given to her by her husband's will in case she actually survived him. (*Matter of Piffard,* 111 N. Y. 410; *Curley* v. *Lynch,* 206 Mass. 289; *Condit* v. *De Hart,* 62 N. J. L. 78, 80, 81; *Sharpe* v. *M'Call,* 1 Ir. Rep. [1903] 179, 184; *Matter of Mayo,* 76 Misc. Rep. 416.)

Section 141 of the Real Property Law (Cons. Laws, ch. 50) provides: " A power may be vested in any person capable in law of holding, but cannot be exercised by a person not capable of transferring real property." Powers over personal property are governed by the same rule. (*Hutton* v. *Benkard,* 92 N. Y. 295, 305; *Cutting* v. *Cutting,* 86 N. Y. 522; *Cochrane* v. *Schell,* 140 N. Y. 516, 534; *Matter of Moehring,* 154 N. Y. 423.)

Mrs. Fowles, unless she actually survived her husband, was not capable of transferring real property and was, therefore, not capable of exercising any power under her husband's will. To prove appointment according to the power given, it was necessary for those claiming under it to prove actual survivorship of Mrs. Fowles. The one fact that seems to have been agreed upon by the

courts below and by all counsel in this case is that the appellant, Dorothy Elizabeth Smith, does not take by appointment.

The only other claim that can be made is that the will of Mrs. Fowles must be read into that of her husband, as he gives this part of his residuary estate in accordance with her will. But here again we are met with our law which prevents the incorporation into a will of other instruments which have not been duly executed and attested as required by our statute. (Dec. Est. Law [Cons. Laws, ch. 13], sec. 21; Booth v. *Baptist Church of Christ,* 126 N. Y. 215, 247; *Matter of Emmons,* 110 App. Div. 701; *Matter of Conway,* 124 N. Y. 455; *Keil v. Hoehn,* 72 Misc. Rep. 255.)

Whether or not our doctrine of incorporation by reference would exclude the will of a wife expressly and specifically made a part of her husband's will, both wills having been executed at the same time, need not be considered as such are not the facts in this case. The eighth clause of the will does not refer to any specific or existing will of his wife, according to which this part of the residuary estate is to pass, but has reference to the last will which she might make. Thus if she had survived him she could have changed her will as often as she pleased. Even in those states which do not follow our law, but have adopted the English doctrine of incorporation by reference, these facts would not justify reading Mrs. Fowles' will into that of her husband. (*Curley v. Lynch,* 206 Mass. 289.)

Mrs. Fowles has, therefore, failed to make any appointment as authorized by her husband's will, and the one-half of the forty-five per centum of the residuary estate passes in accordance with the determination of the Appellate Division to the trusts for the testator's children under the eighth clause. We cannot give to the words " in the event that my said wife should fail to make

testamentary disposition of the said one-half thereof " the narrow construction that is insisted upon by the appellants, namely, that " to fail " means to fail after the power came into existence by survivorship, so that if no survivorship be proved this portion passes by intestacy. This phrase is broad enough to include the absence of appointment under any conditions.

We, therefore, conclude that the legacies under the second and fourth provisions of this will pass to the executor of Mrs. Fowles' will, and that the one-half of the forty-five per centum of the residuary estate under the eighth clause passes into the trusts for the testator's two children.

The order of the Appellate Division should be modified accordingly and the matter remitted to the surrogate for a decree in accordance with this opinion, with costs to the appellants in this court payable out of the estate.

McLAUGHLIN, J. (dissenting). I am unable to concur in the opinion of Judge CARDOZO or fully in the opinion of Judge CRANE for the following reasons:

By the eighth article of the testator's will he gave his residuary estate to trustees named therein to divide into three parts, the first part to consist of 45% and each of the other two parts to consist of $27\frac{1}{2}\%$. He directed that the income of the first part be paid to his wife during her life and upon her death one-half of such 45% was to be disposed of by the trustees in the manner directed in such will as she might leave. Then follows a provision to the effect that if she did not make a testamentary disposition of such half the same was to be divided into two equal parts, one of which was to be held in trust for each of his daughters by a former wife for life with remainder to their respective issue. He appreciated that unless his wife did survive him she could not make a testamentary disposition of such half and having this

thought in mind he sought by the ninth clause of his will to do what, as I understand, we are all agreed he could not do, namely, prevent the court from ascertaining if it could whether or not his wife survived him. It not being established that his wife did survive, the power of disposition given to her lapsed, since it could only come into existence by his death before hers. If the power never existed, obviously it could not be exercised, no matter what the testator said or what his wishes were on that subject.

But it is suggested that notwithstanding the power of appointment lapsed, the testator nevertheless could, and did, prevent the *consequences* of a lapse by providing in effect that the estate of which his wife was given the power of appointment, in case it could not be determined whether she survived him or not, should go to whom she designated in her will; and that this result can be accomplished (a) by reading into his will the will which she left, and (b) then construing his will as a gift by implication to the legatees named in her will, and (c) as a " ratification of any execution of the power, however premature."

There is, as it seems to me, a complete answer to the suggestion. (1) There is nothing in his will which in any way refers to her will and it cannot be read into his without disregarding the rule as settled by this court that an unattested paper which is of a testamentary character cannot be taken as a part of a will even though referred to by that instrument. (*Booth* v. *Baptist Church of Christ*, 126 N. Y. 215, 247; *Matter of Will of O'Neil*, 91 N. Y. 516, 523; *Williams* v. *Freeman*, 83 N. Y. 561, 566; *Langdon* v. *Astor's Executors*, 16 N. Y. 9, 26.)

(2) I do not think his will can be construed in such a way as to constitute a legacy by implication to the legatees named in her will. There is no reference in his will to the legatees named in hers nor is there anything

to indicate that he ever knew or had any knowledge of such legatees. In *Bradhurst* v. *Field* (135 N. Y. 564) this court held that to uphold a legacy by implication the inference from the will of the testator's intention must be such as to leave no hesitation in the mind of the court and to permit of no other reasonable inference. This rule was re-stated and approved in *Brown* v. *Quintard* (177 N. Y. 75). To sustain a bequest by implication there must be so strong a probability of the intention in this respect that the contrary cannot be supposed. (*Post* v. *Hover*, 33 N. Y. 593.) And especially is this true when the implication will result, as it does here, in the disinheritance of an heir at law. (*Scott* v. *Guernsey*, 48 N. Y. 106.) An heir will not be disinherited unless by plain and cogent inference arising from the will. (*Quinn* v. *Hardenbrook*, 54 N. Y. 83; *Lynes* v. *Townsend*, 33 N. Y. 558.)

(3) The method of construction suggested cannot be treated in my opinion " as a   \*   \*   \*   ratification of any execution of the power, however premature." The power, so far as appears, never came into existence and there can be no ratification of its execution under such circumstances. A ratification of an act is always predicated upon the existence of the act ratified. There is no proof here that Mrs. Fowles ever exercised any power of appointment; hence, her assumed act is impossible of ratification.

It is said the construction suggested is justified by *Matter of Piffard* (111 N. Y. 410). I do not so understand that case. I think that authority is to the contrary. There certainly is a plain distinction between this case and that. In the *Piffard* case the will contained an express devise to the executors named in the daughter's will, and this provision was re-affirmed in the codicil executed after the daughter's death. The language in the will was: " I direct that such share or shares shall

be paid over by my said executors to the executors or trustees named in and by the several wills of my said daughters in the case of the death of them or either of them in my lifetime instead of to my said daughter or daughters." In the codicil, the daughter having previously died, the language was: "Such share or shares shall be paid over by my said executors to the executors or trustee named in the several wills of my said daughters in case of the death of them or either of them in my lifetime instead of to my daughter or daughters." The property, therefore, passed in that case, not by the exercise of the power of appointment given or by anything said in the will to prevent the consequences of a lapse, but by the act of the testator himself.

In the present case the testator, if he had so desired, could have done precisely what was done in the *Piffard* case. He could have directed that if his wife predeceased him or if they both died under such circumstances that that fact could not be ascertained, then and in that event the property of which she was given the power of appointment should be paid to the executors named in her will. But he did not do this, and the court is now asked by a forced rule of construction to do it for him in order to avoid the consequences of the lapse. I am unwilling to do this, and, therefore, concur in the conclusion reached by my brother CRANE as to the construction to be put upon the will so far as the same relates to the one-half of the 45% of the residuary estate. I am, however, unable to concur in his opinion that the bequest to Mrs. Fowles of $5,000, and the furnishings of Fairmile Court upon the death of Mr. Fowles became the property of her estate. There is not a word in his will that indicates he ever intended such disposition. These bequests are absolute in form to her — not to her estate — and the rule is fundamental that a bequest lapses unless the legatee be alive at the time the testator

dies.    If these legacies became a part of her estate, then it is solely because she survived her husband, and the title to the property given to her vested prior to her death.    We cannot so hold without assuming the existence of facts of which there are no findings or proof.    These legacies, therefore, as it seems to me, lapsed and became a part of his residuary estate.

The fact that the testator, when he made his will, foresaw the possibility that he and his wife might meet the tragic end which they did, appeals so strongly to one's desire to carry out his supposed intention that we are apt to lose sight of the fact that the court can construe but cannot make wills, and in this connection it must be borne in mind that we are dealing, not with this one case, but with the law relating to the construction of wills which does not permit conjecture or possibility to take the place of proof.    It is much better in my opinion to adhere to well-settled rules of construction rather than to make for a particular case new ones, the effect of which when put into practice cannot be foreseen.

For the reasons stated I think the order appealed from should be affirmed.

Hiscock, Ch. J., Chase and Andrews, JJ., concur with Cardozo, J.; Crane, J., reads dissenting opinion, except as to specific legacies, and Cuddeback, J., concurs; McLaughlin, J., reads dissenting opinion.

Ordered accordingly.