In the Matter of the Judicial Settlement of the Account of Proceedings of PERCIVAL McCENEY WERLICH, as Administrator, etc., of PERCIVAL JULIUS WERLICH, Deceased.

LILLIE C. MARSHALL, as Administratrix, etc., of LUCY G. WERLICH, Deceased, and ALVERDA FEARON, Individually, and ALVERDA FEARON and GEORGE FEARON, as Executors, etc., of LUCY G. WERLICH, Deceased, Appellants; PERCIVAL McCENEY WERLICH, Respondent.

First Department, January 16, 1920.

Will — provision in codicil that it shall only be valid in event that testator's wife shall die before making will after his death, construed — failure of wife to provide for disposition of property directed by testator to be returned to her.

A testator, after executing a will giving to his son certain jewelry and the balance of his property to his wife after payment of debts and funeral expenses, made a codicil providing that it should only be valid in the event

of his wife's dying before making a will after his death.　By said codicil he bequeathed all of his property standing in his name to his son except certain securities which had been given him by his wife.　These he directed to be returned to her estate.　He further provided that all other properties which may come to him by operation of the will of his wife should be returned to her estate in order that they might be disposed of " according to directions contained in the duly declared will of my said wife and which antedates my death."

*Held,* that the testator's wife having died before the time of his death, the codicil became valid and the property all goes to the son except that referred to as having been given to the testator by his wife.

Since the wife did not provide by will for the disposition of the property which the testator mentioned as having come to him from her, it passes to her next of kin, that is, those whom the law deems to be such after his death.

It was not contemplated that said property should come back to him·if she died intestate in respect thereto.

A will or a codicil speaks not as of the time when it was made but as of the death of the testator.

Clarke, P. J., and Merrell, J., dissent.

Appeal by Lillie C. Marshall and others from a decree of the Surrogate's Court of the county of New York, entered in the office of the clerk of said court on the 12th day of June, 1919.

*Howard Mansfield* of counsel [*Lord, Day & Lord,* attorneys], for the appellants.

*Paul Armitage* of counsel [*Douglas, Armitage & McCann,* attorneys], for the respondent.

Smith, J.:

Percival Julius Werlich, called Captain Werlich, and Lucy Glover Werlich were married during the year 1903.　He had been married previously and a divorce had been procured by his first wife.　There was one child born to the first marriage, Percival McCeney Werlich, who is accounting as administrator with the will annexed of his father.　Lucy G. Werlich died on October 6, 1915.　Captain Werlich died March 16, 1916.　His sole heir at law and next of kin was his son Percival McCeney Werlich.　Mrs. Werlich had during her lifetime property in the United States of America, Great Britain and in Hong Kong and Shanghai.　The property in the United States amounted to approximately $100,000, and with the

exception of certain money and securities in the State of Virginia of about $40,000, was managed and cared for by Lord, Day & Lord, attorneys, of New York city. The property in London and in China amounted to approximately $100,000, and at those points was looked after and cared for by agents.

On February 28, 1905, Captain Werlich made a will, wherein he gave to his son his gold watch and chain, and then provided, after payment of all his just debts and funeral expenses, that the balance should go to his wife, Lucy Glover Werlich. On October 21, 1911, Captain Werlich executed a codicil to his will, upon the construction of which the rights of the parties here depend. That codicil reads as follows:

" I, Percival Julius Werlich, living at present in Paris, France — being of sound mind do hereby establish and declare this to be a codicil to my will — but this codicil shall only be deemed valid in the event that my wife, Lucy Glover Werlich, should die before my said wife makes a will after my death, otherwise it is to be treated as nugatory and as non existent.

" I hereby bequeath all property of whatever kind or nature standing in my name to my son Percival Julius Werlich, except certain stocks and shares which were given me from time to time by my said wife, and which are advertised on the attached list, authenticated by my signature. These excepted stocks and shares I direct to be returned to my said wife's estate. All other properties of whatever kind or nature which may come to me by operation of the will of my said wife, I wish returned to her estate, in order that these may be disposed of according to directions contained in the duly declared will of my said wife and which antedates my death."

The learned surrogate had held that this codicil, by its terms, became inoperative because of the death of Lucy Glover Werlich before that of her husband. (107 Misc. Rep. 207.) I do not so read the codicil. In the 1st paragraph it is provided in what case the codicil shall be valid, and that is, " in the event that my wife, Lucy Glover Werlich, should die before my said wife makes a will after my death." That is a contingency upon which the codicil becomes valid and not a contingency upon which it becomes void. The word " only " as used in this clause would have the effect of rendering unnecessary the use of the alternative provisions found in the latter part of the clause.

First Department, January, 1920.          [Vol. 190.

With these alternative provisions inserted the codicil may be read as though it provided that the codicil should be deemed valid if the testator's wife should die before making a will after his death. This event which is made a condition of the validity of the codicil might happen in two ways, *first*, it might happen if she died before his death; *secondly*, if she survived her husband and died without making a will. The possible contingency of her dying first was to my mind clearly contemplated by the further provisions of the codicil, as to certain stock which should go to his wife's estate, and also that any property of which he should die possessed which came to him by the will of his wife should be returned to " her estate." He could receive nothing under her will unless her death should precede his. His property he had divided into two lists. One list was composed of property which had been given to him by his wife. The second list was composed of property which was his absolutely. The codicil then referring to this first list gives all the balance of the property to his son, that is the property which he owned independently of his wife's gift, and provided that the property which came to him by gift from her, described in the first list attached, should be returned to her estate. It is argued, however, upon the assumption that there were two contingencies contemplated by the codicil, one the decease of his wife prior to his death, and another a survival of his wife and her failure to make a will, that this second contingency would be invalid, and, therefore, that the whole codicil must be rejected. If the testator's wife survived she would take under the original will the absolute title to the property. This she was authorized to spend as she would or to give away by her will executed after his death. It may be that in this second contingency if she survived her husband that the absolute title passing under the original will would be so incompatible with any restriction upon its subsequent use that the codicil would in such case be declared void. In my judgment this question became irrelevant in this case, because of the death of the wife before the death of the testator. . It is an elementary rule in the construction of wills that a will or a codicil speaks not as of the time when it was made, but as of the death of the testator. At the time of the death of the testator the wife having died, the first contingency has hap-

pened and the codicil has become valid. There was at that time no possible contingency that might occur after the death of the testator which could render the codicil invalid, and the codicil must, therefore, read as though its validity depended upon the death of the wife before the death of the testator, which event has actually happened.

Assuming then the validity of the codicil, it is clear that the property all goes to the son, except that property mentioned in the first list, which was attached to the codicil as property given to the testator from time to time by his said wife. That property, it is provided, shall go to her estate. It is in respect of this property that this question arises. If the will of the wife had provided for a disposition of this property which might come from her husband, I think that that will should govern and that the legacies would be valid. (*Matter of Fowles*, 222 N. Y. 222.) But she did not provide for the disposition of this property. In neither will did she assume to give any other property than property of which she died possessed. Upon her failure to provide for the disposition of this property by her will, a legacy to her estate can only mean a legacy to her next of kin. But it is claimed that at the time she died her husband was her sole next of kin. It clearly was not contemplated that the property should come back to him if she died intestate in respect thereof. Moreover, if the codicil speaks as of the time of the death of the testator, her next of kin are those whom the law deems to be such after his death, and it is to those next of kin which would include Alverda Fearon, her sister, if not others, that this property has we think passed under his codicil.

The decree, therefore, should be reversed and the matter remitted to the surrogate to enter a decree in accordance with this opinion, with costs to all parties appearing payable out of the fund.

LAUGHLIN and PHILBIN, JJ., concur; CLARKE, P. J., and MERRELL, J., dissent.

Decree reversed, with costs to all parties appearing payable out of the fund, and proceeding remitted to the surrogate for further action in accordance with opinion.