Joseph A. Cox, S.
The testator, by the Tenth article of his will, bequeathed his residuary estate to trustees with a direction that the sum of $10,000 be set aside and the balance of the residuary assets then be divided into 10 equal parts, 6 of such parts together with the sum of $10,000 to constitute trust fund A, and four of such parts to constitute trust fund B. The testator directed that the income derived from trust fund A be paid to his wife and on her death a sum be set aside for the care of a cemetery lot, a small trust be created, and certain general legacies be paid. These bequests are enumerated in subdivisions numbered 1 to 5 inclusive. Subdivisions 6 and 7 read as follows:
“ 6. Any balance then remaining in the fund known as trust fund ‘ A ’ I give and bequeath to the Joseph l. and eat l. feeund foundation created by the will of my wife eat l. feeund.
7. In the event that any of the persons named in clause 10 (2) (3) (4) (5) shall not survive my wife and myself, then and in such event I give and bequeath the bequest so made to the Joseph l. and bat l. feeund foundation created by the will of my wife EAT L. FEEUND.
The testator directed that the four residuary parts constituting trust fund B be held by his trustees during the lives of a sister and a brother of the testator and, during the lives of such relatives, the trust income be paid to them in stated proportions. The remainder of this trust fund is disposed of in the following language: “ Upon the death of the survivor of my said sister and brother, or upon my death if they shall have both predeceased me, I direct that the principal of said Trust Fund ‘ B ’ be paid over to the ‘ Joseph l. and eat l. feeund foundation ’ created by the will of my wife eat l. feeund.”
The Tenth article also contains a paragraph designated 0 which reads: “I give unto my trustees herein named all of my right, title and interest in and to the ‘ olaea e. steauss trust ’, in trust nevertheless, to pay over the income derived therefrom to my cousin Joseph feeund, so long as he may live, and Upon his death I give and bequeath the principal thereof to the ‘ Joseph l. *8 and eat l. FREUND foundation ’ created by the will of my wife BAIL. FREUND.”
The Joseph L. and Ray L. Freund Foundation to Avhich the testator bequeathed trust remainders was not in existence at the date of the testator’s death inasmuch as the testator’s wife survived him. Because of this fact issue is raised in this accounting proceeding as to the validity of the remainder dispositions of the three trusts which the testator designated as A, B and 0. Certain respondents, conceding that the testator could make a valid gift to a foundation in existence at his death, contend that the gifts attempted by the testator are invalid.
Certain facts, precedent in time to the instant proceeding, either appear in the pleadings as uncontroverted or were adduced at a hearing and these facts must be considered in connection with the question as to the complete validity of the will and its operative effect. On June 8, 1948 the testator and his wife entered into an agreement which recited that on the same date the testator and his wife had made their respective wills, that the benefits for the wife which were contained in the testator’s will would not be lessened by a subsequent instrument, that the wife would make no changes of the provisions of her will except with respect to certain limited bequests to members of her family but that the testator might make changes in his will so long as the benefits therein for his wife were not altered without her consent. On June 8,1948, the date of the agreement, the testator’s wife had executed a will which bequeathed her residuary estate in trust for the benefit of her husband and directed that upon his death the trust remainder be paid over to the Joseph L. and Ray L. Freund Foundation. Later provisions of this will bequeathed the share of her estate directed to be paid over to the foundation to trustees ‘ ‘ to create a charitable foundation to be known as the ‘ Joseph l. and rat l. freund foundation ’.” There followed statements as to the limited charitable purposes of the foundation so to be created. The will also authorized administration of the fund by the trustees or by the trustees in association with other persons and existing organizations or by the organization of a separate charitable corporation.
The testator died in May, 1950 and an instrument dated November 14,1949 was admitted to probate as his will and is the instrument now requiring construction. The testator’s wife executed new wills following her husband’s death and upon her death in January, 1959 an instrument dated January 15, 1951 and codicils thereto dated July 10, 1952, July 15, 1955 and December 24, 1956 were admitted to urobate as her will. The *9 wife’s probated will bequeathed her residuary estate in trust and directed that it be paid to the ‘ ‘ Joseph l. and bay l. ebeund foundation ” and that such property be used for the benefit of indigent aged persons and indigent abandoned, neglected or handicapped children of the Jewish faith. This charitable intention was the same as that expressed in her will of 1948 which was referred to in the agreement between her and the testator. The will authorized the trustees to administer such fund or to associate themselves with other persons and organizations or to cause a charitable corporation to be organized with a name appropriate to the memory of the testatrix and her husband.
In this State, Matter of Fowles (222 N. Y. 222) has been considered the landmark decision upon questions of incorporation by reference and the validity of testamentary reference to documents extraneous a will. The Fowles case involved a reference to the will of the testator’s wife and the grant to her of a power to appoint property of the testator. The death of the testator and his wife in a common accident, the sinking of the Steamship Lusitania, rendered a determination as to survivorship impossible. It has been said that the case “ is scarcely a case of incorporation by reference; as the wife’s will, although it, in fact, was made at the same time that the husband’s will was made, might well have been made at a later time. The court, however, regarded it as a case of incorporation ”. (2 Page, Law of Wills [Bowe-Parker Rev.] p. 94). The Fowles case is a recognition that a valid incorporation may be made by reference to a will to be executed subsequent to the death of the person attempting the incorporation. In President & Directors of Manhattan Co. v. Janowitiz (260 App. Div. 174, 178) it was said: “If the Fowles case (supra) and the earlier case of Matter of Pifar d (111 N. Y. 410), decided in 1888, did not relax the rule in this State against incorporation, they are authorities for the proposition that a will can make a disposition by incorporating the dispositions made in the will of another, whether that other will antedated or was executed subsequent to the testator’s will.”
The facts in the case at bar fall within the Fowles decision and that case provides the basis for finding the will of this testator valid and effective to accomplish his testamentary purposes. It can be argued, on the language of Matter of Rausch (258 N. Y. 327) and other cases involving the incorporation of extraneous documents, that, because the document to which reference is made must be in existence and the tests of identification must be precise and definite, a reference to an existing will of a living individual fails to meet the requirements for validity. This argument was made in Fowles but there was rejected upon the *10 ground that the purpose of the rule of incorporation, a product of judicial construction, is to safeguard against fraud and mistake. It must be recognized that the opportunity for fraud and the possibility of mistake exists when reference is made to an ambulatory instrument but such dangers do not threaten in this instance. While the wife of the testator could make a new will completely different in its provisions from the one in existence at the date of the testator’s will, the fact here is that the contract between the spouses provided the clear identification of the testator’s purposes and constituted a safeguard against fraud. A new and different will of the wife, validly executed, would be admitted to probate as her will but the contract would be enforcible in equity and would operate to accomplish the agreed purposes of the parties to the contract (Morgan v. Sanborn, 225 N. Y. 454; Edson v. Parsons, 155 N, Y. 555; Tutunjian v. Vetzigian, 299 N. Y, 315; Matter of Venbllow, 2 A D 2d 365). There is no basic distinction between this type of contract and a trust agreement which is but another form of contract. In connection with a testamentary reference to a trust agreement, the often-repeated criterion appeared once again in Matter of Ivie (4 N Y 2d 178, 182) where it was said: “ We believe that as long as adequate safeguards are employed, the rule against .incorporation by reference ¡should not be carried to ‘ a drily logical extreme (Matter of Fowles, supra, p. 233.) ”
The contention has been made that validation of the testator’s will is the condoning of an unlawful suspension of ownership because of the possibility that, had the wife survived the income beneficiaries named in the testator’s will, her will would not have been effective at the time for the vesting of the trust remainders in possession and neither a charitable foundation nor trustees under the wife’s will would have been in existence to receive the trust remainders. That is not the fact situation actually existing and it has not been the rule that an unlawful suspension results from a testamentary gift to a charitable organization to be formed subsequent to a testator’s death or even at a later date upon the termination of life estates created by a will (Matter of Le Fevre, 233 N. Y. 138; Maynard v. Farmers’ Loan & Trust Co., 208 App, Div. 112, affd. 238 N. Y. 592). At the date of the agreement of 1948 and at the date of the testator’s will it was not possible to predict which of the spouses would be the longer liyed and, for such reason, there was the possibility that the wife might survive the husband for an extended period but it must be recognized that the identical possibility existed in the Fowles case and there the court concerned itself only with the facts as they eventuated,
*11 It is held that the Tenth article of the testator’s will provides valid dispositions for charitable purposes and that payment shall be made to the Joseph L. and Bay L. Freund Foundation, a corporation heretofore organized in compliance with the direction in Mrs. Freund’s will. Upon this issue the motions to strike exhibits numbered 1 to 5 inclusive, 8 to 11 inclusive and 15 are denied and such of the stated exhibits as were marked for identification are received in evidence. Exhibits 6, 7 and 12 are stricken.
A further question is raised in the petition respecting certain general bequests made in the Tenth article of the will to named individuals contingent upon their surviving both the testator and his wife. These bequests are provided in subdivisions 4 and 5 of the Tenth article of the will. The principal amounts of the bequests were paid on January 20, 1960 and conditional receipts were given by the legatees in which they reserved their respective claims to any trust income to which they might be entitled pursuant to section 204 of the Surrogate’s Court Act.
The contention of these legatees that they are entitled to participate in the income earned on the trust principal is rejected. The legatees are entitled to interest on their legacies from the date when the legacies became payable, which time was the death of the testator’s wife on January 25, 1959 (Wheeler v. Ruthven, 74 N. Y. 428; Matter of McNamee, 78 Misc. 324; Matter of Hallock, 207 Misc. 555). Interest will be allowed on the legacies, from the estate funds, at the annual rate of 3 %. It is not found that the acceptance of the principal amounts of the legacies constituted a waiver of interest. In Matter of Hodgman (140 N. Y. 421, 428) interest was disallowed because the legatee had accepted payment “without claim of interest” and had made the claim for interest more than 10 years after such acceptance. While it is true that in the cáse at bar the legatees could have rejected payment of the principal amounts without accompanying interest, a refusal of the trustee to make any payment at all would be the assumption of an arbitrary attitude which could expose him to personal surcharge for any interest which ultimately might be found to be due. The payments by the trustee against a receipt containing reservations indicate an understanding between the parties to postpone the legatees’ claims for a determination in an accounting proceeding.
The motion of certain respondents to amend their pleadings to include a defense of the Statute of Frauds is granted and the pleadings aré deemed amended in the form stated in the moving papers. Any party so desiring may settle an intermediate decree with respect to the issues herein disposed of.