The complainant was appointed executrix of the will of her husband, I. Seymour Crane, in which, after legacies, he gave his estate to his executrix in trust for her use, for life, and remainder to his five children, in equal shares. The executrix asks instructions as to the disposition she should make in the administration of the estate, of the certificates of the capital stock of I. Seymour Crane, Incorporated, which came to her possession as part of the estate, and which the children of the deceased, or some of them, claim under gift from their father. The corporation was formed by the deceased, who held the title to a large store building in Montclair, which he owned, and later conveyed to the company. The building represented in value $350,000 and was by far the greater part of his possessions, as is the capital stock of the company the major portion of his estate. At the formation of the company two hundred shares of the stock were issued for incorporation purposes to the deceased, his wife and a son, and upon their cancellation, and in their stead, and shortly after he conveyed the building to the company, he caused a reissue to be made to his wife of sixty-six shares, and twenty-six shares to each of his five children and two to himself. He had his wife and four of the children sign receipts for the certificates on the stub of the stock certificate book, the fifth child refusing to sign because the certificate made out to him was not delivered. The deceased retained all the certificates and they were found with his other securities in his safe after his death. He, at the time they signed, told his wife and children that the stock would not be theirs as long as he lived; that they were to have the certificates at his death, and that his scheme was to avoid payment of the inheritance taxes, and the signatures, to impress the tax officials with the integrity of the transfer. And he also explained *Page 402 
to his wife that he did not want to relinquish ownership of the stock because he might want to sell the building, and that he needed the income while he lived, and that he might want to again rearrange the distribution of the stock. Down to his death the deceased controlled the company, its stock, directors and officers and its income. It was his convenience for controlling the ownership of the building and its income.
There was no donative intent of a present gift of the shares in the company. It was to take effect, as such, at the donor's death, and was testamentary in character. There was no delivery of the shares, or the evidence of the shares — the certificates. The receipts are not evidence of delivery. They were mere pretenses and are false and were taken for an ulterior purpose. And the donor did not strip himself of the ownership and dominion over the shares. He, obviously, had no intention to presently hand the company over to his family. All three essentials to a valid gift, inter vivos, are absent. Stevenson v. Earl,65 N.J. Eq. 721; Taylor v. Coriell, 66 N.J. Eq. 262; Swayze v.Huntington, 82 N.J. Eq. 127; affirmed, 83 N.J. Eq. 335. InGreen v. Tulane, 52 N.J. Eq. 169, relied upon by the defendants, there was donative intent as well as a delivery to a trustee by which the donor stripped himself of ownership, and although the income was reserved to the donor for life, the gift of bonds was complete. The delivery to a trustee is as effectual as delivery to the donee. The delivery to a trustee to pay the gift to the donee at the donor's death is a present gift with the right of enjoyment postponed, and is not testamentary. NationalNewark Bank v. Rosahl, 97 N.J. Eq. 74. In the case subjudice there was no trustee, nor a declaration by the donor of a trust in himself for the donees. The complainant is advised that she holds the stock, as against the defendants, under the trust declared by the will. *Page 403