In the Matter of the Estate of MICHAEL MORAN, Deceased.

Surrogate's Court, Kings County, April 15, 1930.

*Wingate & Cullen* [*Cyrus S. Jullien* and *Edward J. McDonald* of counsel], for the petitioner.

*Kelly, Hewitt & Harte* [*Henry W. Jessup* of counsel], for the executors.

WINGATE, S. The questions here presented for determination arise upon a petition to compel Eugene F. Moran and Henry Joseph Moran to account as executors and trustees of Michael Moran, deceased. A construction of certain items of the will is also sought. The executors have filed an account in that capacity, and the issues presented concern the propriety of such account and their obligation also to account as trustees.

For some time prior to his death on June 28, 1906, Michael Moran was in the towing and transportation business in New York city and vicinity. This business was his sole property and his only substantial asset.

On November 9, 1904, he executed a will which was admitted to probate in this court on March 30, 1907. So far as here material, it reads as follows:

"*Second.* I order and direct that the towing business now carried on by me and known as Moran's Towing Line, shall after my death, be carried on according to the conditions as hereinafter mentioned."

" *Fifth.* For the purpose of making a division of my interest in the vessel property, owned and operated by me in the said towing business, amongst my legatees and next of kin I place its value at, approximately, $50,000.

" *Sixth.* I give and bequeath to my wife, sons, daughter, and the widow of my late son Thomas F. Moran, and her children, hereinafter named, subject to the conditions hereinafter named, an interest in the said vessel property owned and operated by me in the said towing business in the following percentage:

" To my wife, Catherine Moran.............    20% or $10,000
" To my son, Eugene F. Moran.............    28% or  14,000
" To my son, Henry Joseph Moran..........    26% or  13,000
" To my daughter Agnes Belford...........    16% or   8,000
" To Minnie Moran, widow of the late Thomas F. Moran, and her children by said marriage...................................    10% or   5,000

" *Seventh.* Should the value of said vessels owned and operated by me be worth more than the said sum of $50,000 at the time of my decease then the above named legatees are to receive the increase according to the percentage each receives as above mentioned.

" *Eighth.* I order and direct that the net profits shall be paid to the persons above named according to their percentage, after deducting all the costs and expenses incurred in the management of my said towage business, every six (6) months or sooner if convenient, to be decided by my executors (if they should be acting as such, and if not by the trustees)."

The " ninth " item provided that the ten per cent interest for Minnie Moran should be held in trust, the income to be paid to her for her support and that of her children, and on her death the principal paid to the children.

" *Tenth.* I order and direct that the interest bequeathed to my wife, Catherine Moran, be conveyed by Will by her to any of my children as she may see fit, but if my said wife should fail to convey her interest, by her will, then I give and bequeath the said twenty per cent (20%) to Eugene F. Moran, Henry Joseph Moran and Agnes Belford.

" *Eleventh.* I order and direct that the interest conveyed to my wife, children and trustees, and the interest of Minnie Moran and her children, shall not be sold or disposed of by either of them to any outsider. Should they, at any time, become dissatisfied and desire to dispose of their interest they shall sell their interest to my sons Eugene F. Moran and Henry Joseph Moran at the market value of the vessel property and business at the time of the sale."

The " twelfth " item appointed a son, Eugene F. Moran, manager of the business, while by item " eighteenth" he and Henry Joseph Moran were named trustees.

The will contained no residuary clause.

After the execution of this will, and on August 15, 1905, Michael Moran organized a corporation under the laws of the State of New York, under the corporate title of " Moran Towing and Transportation Co.," with a capital of $50,000, divided into 500 shares of the par value of $100 each, to which corporation he transferred the business. The incorporators and subscribers to the capital stock, as stated in the certificate, were: Michael Moran, 260 shares; Eugene F. Moran, 110 shares; Joseph H. Moran, 80 shares; Agnes A. Belford, 20 shares; Julia C. Moran, 10 shares; Catherine Moran, 10 shares, and Minnie Moran, 10 shares; No consideration was paid to the corporation by any one except Michael Moran. The directors named in the certificate were Michael, Eugene F., Joseph, Julia and Catherine Moran and Agnes Belford. Certificates for the respective numbers of shares stated in the certificate were made out, but up to the time of Michael's death they all remained in the stock certificate book undetached, and the book itself remained in the safe in the office of the company. Michael was the president of the company and continued the business without any material change up to the time of his death.

Construction of the will was prayed in connection with its probate and Surrogate CHURCH wrote three separate memoranda on the subject, as well as making findings of fact and conclusions of law and entering a decree.

The third opinion of the learned surrogate, which bears date March 30, 1907, indicates that even then some misunderstanding existed among the parties as to the effect of his previous rulings. These he attempts to clarify by an express limitation and definition of his meaning, as follows: " The sole questions upon which the court has power to pass were the construction of the will of the deceased and the determination of whether under the facts of the case the will was ineffective by reason of there being an intestacy, or if effective to what extent. * * *

" All that I intended to decide, and did decide, in this case is that the reference in the will of the deceased to his ' vessel property ' is broad enough to include his stock ownership in the corporation holding such vessel property, and that if the question should be regarded as doubtful such a construction should be adopted by me rather than one which would create an intestacy. As it appears that certain of the persons named in the will, who were to receive a percentage of the vessel property, had received part of such

stock from the deceased, without making any compensation therefor either to the deceased or to the corporation, I hold that this Court would assume, in considering the percentage to which they were entitled, that the stock so given to them should be deemed an advancement on account of their shares."

This opinion of the learned surrogate, while interesting and, of course, important as throwing light on the operations of his mind, is limited and controlled by his actual findings of fact and conclusions of law, and the decree which was duly made and entered. The pertinent provisions of these documents must, therefore, be examined.

The important findings of fact read:

" *Thirteenth.* That the said Michael Moran in his lifetime exercised complete control and ownership over the said Moran Towing and Transportation Company the same as such ownership and control has been exercised over the Moran Towing Line as if the said Moran Towing and Transportation Company had not been incorporated.

" *Fourteenth.* That the words of gift of the towing business and vessel property contained in the will of the deceased were sufficient to include and did include the stock interest of the deceased in such towing business and vessel property.

" *Fifteenth.* That by the provisions of paragraphs Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh of the will of the said Michael Moran, the deceased herein, the entire stock interest of said Michael Moran in said Moran Towing and Transportation Company, amounting to four hundred and eighty shares passes to the persons named in said will to be held and used as therein provided.

" *Sixteenth.* That the said Michael Moran so caused the said business of the Moran Towing Line to be incorporated as the Moran Towing and Transportation Company in pursuance of a desire to perpetuate said business of the Moran Towing Line in his family, and at the request and direction of the said Michael Moran certain shares of stock of the said corporation known as the Moran Towing and Transportation Company were issued at the direction of said Michael Moran, deceased, to various members of his family and beneficiaries of his will.

" *Seventeenth.* That the said Michael Moran directed the issuing to Catherine Moran of the stock owned by him to the number of ten shares of said stock for which said Michael Moran received no compensation."

Paragraphs " Eighteenth " to " Twentieth " recited in identical language the issuance to Eugene F. Moran of 110 shares, Henry Joseph Moran of 80 shares, Agnes Belford of 20 shares.

"*Twenty-first.* That the said ten shares of stock of the Moran Towing and Transportation Company so issued at the direction of said Michael Moran to Catherine Moran was made by the said Michael Moran, deceased, to the said Catherine Moran as an advance on account of the distributive share of the said Catherine Moran in the estate of said Michael Moran, deceased, as provided for and to which the said Catherine Moran was entitled under the last Will and Testament of the said Michael Moran."

Paragraphs "Twenty-second" to "Twenty-fourth" made findings in identical language respecting the shares of Eugene, Henry and Agnes.

Among the conclusions of law of importance in this determination are the following:

"*Sixth.* That the words of gift of the towing business and vessel property contained in the will of deceased, Michael Moran, were sufficient to include and did include the stock interest of the deceased in such towing business and vessel property."

"*Eighth.* That the paper propounded as the last Will and Testament of Michael Moran, deceased, bearing date the 9th day of November, 1904, is the last Will and Testament of Michael Moran, deceased, and should be admitted to probate as a will valid to pass stock of the said Michael Moran, deceased, consisting of four hundred and eighty shares of stock in the Moran Towing and Transportation Company to the persons named in said Will, to be held and used as therein provided in paragraphs Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh.

"*Ninth.* That the ten shares of stock of the Moran Towing and Transportation Company issued to Catherine Moran was an advance on account of the benefit and distributive share which the said Catherine Moran was entitled to receive from the estate of the said Michael Moran under the provisions of paragraphs Fifth, Sixth, Seventh, Eighth, Tenth and Eleventh of the will of said Michael Moran, deceased."

Paragraphs "Tenth" to "Twelfth" are identical in wording with "Ninth" in references to the stock issued in the names of Eugene, Henry and Agnes.

The amended decree, entered on June 28, 1907, on the written consent of Eugene F. Moran, Henry Joseph Moran, Catherine Moran, Agnes A. Belford, Minnie Moran Reynolds and Frank A. Crowe, as special guardian for Edmund Moran and Margaret Moran, read in part as follows:

"* * * and the Surrogate having made and rendered a decision herein * * * wherein he finds as Conclusions of Law * * * that the words of gift of the towing business and

vessel property contained in the will of deceased herein were sufficient to include and did include the stock interest of said deceased Michael Moran in such towing business and vessel property; that the paper propounded as the last Will and Testament of Michael Moran, deceased, herein, bearing date November 9th, 1904, is a will valid to pass personal property and valid to pass the stock interest of the said Michael Moran, deceased, consisting of Four hundred and eighty shares of stock in the Moran Towing and Transportation Company to the persons named in the said Will to be held and used as therein provided in Paragraphs Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh; that the advance of ten shares of stock of the Moran Towing and Transportation Company to Catherine Moran was an advance on account of the benefit and distributive share which the said Catherine Moran was entitled to receive from the estate of the said Michael Moran, under the provisions of paragraphs Fifth, Sixth, Seventh, Eighth, Tenth and Eleventh of the will of said Michael Moran, deceased, herein   *   *   *.

" *Ordered* and *Adjudged* and this Court   *   *   *   *Does Adjudge And Decree* that the paper writing   *   *   *   should be and the same hereby is admitted to probate as the last Will and Testament of Michael Moran, late of the County of Kings, deceased, as a will valid to pass personal property, and valid to pass the stock interest of the said Michael Moran, deceased, consisting of Four hundred and Eighty shares of stock of the Moran Towing and Transportation Company, to the persons named in said Will to be held and used as therein provided in paragraphs Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh.

" And it is further *Ordered, Adjudged and Decreed* that the true construction and legal effect of paragraphs Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh in said last Will and Testament of Michael Moran   *   *   *   contained is as follows:

" *   *   *   that the words of gift of the towing business and vessel property contained in the will of the deceased Michael Moran herein were sufficient to include and did include the stock interest of said deceased Michael Brown in such towing business and vessel property, and valid to pass the stock interest of the said Michael Moran, deceased herein, consisting of Four hundred and Eighty Shares of Stock of the Moran Towing and Transportation Company to the persons mentioned in said Will, to be held and used as therein provided in paragraphs Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh; that the advance of ten shares of stock of the Moran Towing and Transportation Company to Catherine Moran was an advance on account of the benefit and

distributive share which the said Catherine Moran was entitled to receive from the estate of the said Michael Moran under the provisions of paragraphs Fifth, Sixth, Seventh, Eighth, Tenth and Eleventh of the will of said Michael Moran, deceased herein;  *  *  *."

This decision and decree was never modified, vacated or appealed and, therefore, has become the law of the case. It thus not only stood unimpeached by Catherine Moran up to the time of her death — a period of over eighteen years — but was actually consented to by her at the time of its entry. It requires no citation of authorities to demonstrate that her personal representatives stand in no different position in respect to it from that in which she would have stood were she now before the court.

Before analyzing the findings and decree and applying them to the will, it may be of advantage to note briefly the actions of the parties in relation to the subject-matter, following the entry of the decree.

The certificate, numbered " 6," for the ten shares of stock standing in the name of Catherine, never came into her possession, but remained continuously undetached in the stock certificate book of the corporation up to the time of its cancellation on December 11, 1922. Practically from the date of the entry of the decree, however, Catherine was treated as being the beneficial owner of ninety-six shares of the stock of the company, ninety-six shares being twenty per cent of the four hundred and eighty shares which the findings and decree determined belonged to Michael at the time of his death. She voted this number of shares at stockholders' meetings and received all dividends declared on the basis of such holding. These dividends were paid directly to her by checks of the corporation which she personally indorsed and deposited in her own bank account. Until 1921 her attendance at directors' and stockholders' meetings was regular. Not only did she take an active part in the management of the corporation, but it was abundantly demonstrated on the hearings that she received the annual statements of the corporation and was familiar with its business and affairs. After 1921 she did not personally attend the meetings, but was regularly represented by attorney who not only voted on her behalf at stockholders' meetings, but was permitted to represent her in the deliberations of the board of directors. The record is utterly barren of any demand by her for any certificate of stock and her acquiescence in the manner of conduct of the corporation and the interest in its affairs allotted to her, seems to have been complete.

While this practical construction of her understanding of her

rights is possibly not conclusive, it is extremely cogent evidence against the validity of this claim first asserted after her death.

The first contention advanced by her administrator is that it is entitled under the terms of the will, as construed by the 1907 decree, to absolute ownership of the ten shares of stock issued in the name of Catherine Moran on the incorporation of the company. The alleged basis of this claim is the argument that Surrogate CHURCH held these ten shares to be an "advancement," that an advancement implies an absolute gift, and that, therefore, Catherine, while in the will confined to a life estate with power of appointment strictly limited to Michael's children, must be deemed the absolute owner of this stock. In the opinion of this court, such a construction could not be reached without doing the most utter violence to the evident intention of the surrogate as well as to the manifest intention of the testator.

It is true that in the explanatory opinion the learned surrogate uses the word " advancement," but this word, in the findings and decree, is, in four places, as shown, *supra*, changed to "advance."

That the two terms are by no means equivalent is indicated by reference to any good dictionary.

The Standard Dictionary gives as one of the preferred definitions of the noun " advance," which is the form here used: " Anything supplied or paid beforehand," while " advancement " is defined as " A free and irrevocable gift by a parent in his lifetime to his child on account of the share the child would have should the parent die intestate." Speaking of the word " advances," it is said in *Vail* v. *Vail* (10 Barb. 69, 73): " Its etymological and its ordinary use indicates moneys paid before, or in advance of, the proper time of payment."

On the other hand, the Court of Appeals in *Bowron* v. *Kent* (190 N. Y. 422, 431) quotes the American and English Encyclopedia of Law: " An advancement is defined to be ' a transfer of property from a person standing in *loco parentis* toward another, to that other, in anticipation of the share of the donor's estate which the donee would receive in the event of the donor's dying intestate.' "

Respecting the use of the word " advance," it is said in 2 C. J. 33: " * * * the word has no such certain meaning that the court can determine the sense in which the term is used by the parties without examining the contract as an entirety and seeking the aid of the surrounding circumstances and the practical construction of the contract by the parties themselves."

Judicial approval for this position is found in *Schlesinger* v. *Burland* (42 Misc. 206, 209); *Trust & Deposit Co.* v. *Verity* (33 id. 4, 6), and *Northwestern Mut. L. Ins. Co.* v. *Mooney* (108 N. Y. 118).

It is unquestionable that an advancement, strictly speaking, implies an absolute gift as is abundantly demonstrated by the citations in the brief filed on behalf of the administrator. Obviously such absolute gift, if it took place, must have occurred in the lifetime of Michael Moran. Therefore, an acid test of the sense in which Surrogate CHURCH four times employed the word "advance" in the findings and decree will be found in his statements respecting the ownership of this stock by the decedent. No doubt on this score can be entertained in view of his four times repeated statement that the will was "valid to pass the stock interest of Michael Moran * * * deceased, consisting of *Four hundred and eighty shares* of stock of the Moran Towing and Transportation Company * * *." Nor can there be any doubt from the context of the findings and decree that the four hundred and eighty shares which the surrogate had in mind was made up of the ten issued in the name of Catherine, the one hundred and ten in the name of Eugene, the eighty in the name of Henry, the twenty in the name of Agnes, and the two hundred and sixty in the name of the decedent, for these figures and references, also, are four times set forth. In other words, this determination four times emphasizes the fact that the ten shares issued in Catherine's name did not belong to her but did belong to the testator at the time of his death, and could not, therefore, be an "advancement" to her, since at such time title to them was not in her.

Finally, on the subject of the construction and interpretation of the decree, we have the express statements of the surrogate, again four times repeated, that the ten-share stock "advance" to Catherine was an "advance" under paragraphs 5, 6, 7, 8, 10 and 11 of the will, and paragraph 10, four times referred to, expressly limited the beneficial enjoyment of Catherine to a life interest with testamentary power of appointment strictly limited to Michael Moran's children.

It must be entirely obvious, therefore, that when Surrogate CHURCH used the word "advance" he meant "advance" and not "advancement," and that he used the word in the sense of payment or setting aside prior to the usual time for such action in the ordinary course of distribution under his will.

The considerations hereinbefore noted would, in the opinion of the court, definitely dispose of any contention that the administrators of Catherine had any interest in or right to the ten shares of stock issued in her name, since the question was expressly determined by Surrogate CHURCH whose decree has stood unassailed for over a generation. Were the question an open one, however, the same result would, in the opinion of the court, be inevitable.

Assuming, but by no means deciding, that an advancement, using the term in its strict legal sense, can be made other than by a parent to a child, it is fundamental that such advancement, to be classed as such, must be an outright gift *in præsenti*, embodying all of the requirements of a valid gift *inter vivos*. One of the essential prerequisites to any such gift is an absolute and unconditional delivery of the subject-matter thereof. (*Leary* v. *Geller*, 224 N. Y. 56, 59; *Matter of Van Alstyne*, 207 id. 298, 308; *Schwab* v. *Schwab*, 177 App. Div. 246, 248; *Vincent* v. *Rix*, 248 N. Y. 76.) As is said by the Court of Appeals in the last cited case (at p. 82): " Delivery is essential to constitute a valid gift. The delivery must be such as to vest the donee with the control and dominion over the property and to absolutely divest the donor of his dominion and control, and the delivery must be made with the intent to vest the title of the property in the donee. (*Jackson* v. *23rd St. Ry. Co.*, 88 N. Y. 520, 526.) The delivery necessary to consummate a gift must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit; there must be a change of dominion and ownership; intention or mere words cannot supply the place of an actual surrender of control and authority over the thing intended to be given. While delivery may be made to a third party for and in behalf of the donee, yet handing the property to an agent of the donor to be delivered to the donee is not sufficient."

Tested by this rule, the facts in the instant case fall far short of the prerequisites to a valid gift. The certificate of stock was never delivered to Catherine, nor was any symbolical delivery or substitute therefor adopted by the testator. The certificate remained continuously under his control until the time of his death, at which time the possibility of a gift expired.

Surprising as it may seem, only two cases have been found involving facts substantially similar to those here presented, but in both, although the factual showings were stronger than those in the instant case, the validity of the gift was denied. The first is the elaborate and learned opinion of Surrogate SCHENCK in *Matter of Brady* (133 Misc. 795), in which the pertinent decisions are largely reviewed, and the second is a determination by the Court of Chancery of the State of New Jersey in *Crane* v. *Crane, Inc.* (135 Atl. 782).

Even were the question an open one, therefore, it must be determined that neither Catherine Moran nor her administrators had any rights in this stock other than as limited by the terms of the will.

That this result is in conformity with the wishes of the testator is obvious, since the will throughout clearly indicates a desire that the business should remain wholly in his own family. Catherine was his second wife, and the result of a determination that this stock was absolutely hers would result in its title passing to outsiders by operation of law.

The second contention of the administrators is to the effect that accounts should be filed by the accounting parties as trustees as well as executors. This position is based upon the fact that in 1922 a certificate for the ninety-six shares of the corporate stock, in which Catherine had a life interest, was issued in the name of " Eugene F. Moran and Joseph H. Moran, trustees for Catherine Moran under the last Will and Testament of Michael Moran."

The argument rests solely upon this use of the word " trustees." There is an utter failure to demonstrate that Eugene and Joseph, or either of them, received or exercised any trust powers over this stock, either under the will or by agreement of the parties. By the terms of the will, Catherine had a life interest in the stock with a limited power of appointment, and nothing more. The only incidents of such interest were the right to receive dividends and to exercise voting powers on the stock during her life and to be qualified to assist as a director in the management and conduct of the business. All of these rights and privileges she personally received and exercised. None of them were received or exercised for her by the alleged trustees. Had they been really trustees as claimed, they would have been entitled to collect commissions on the entire sum of about $73,000 which was paid her in dividends during the period. They did not receive a cent of this sum, all payments being made to Catherine direct.

Under the terms of the will, Catherine received only a life estate with limited power of appointment, in default of the exercise of which remainders over were given. Under such circumstances, the rule stated in *Smith* v. *Van Ostrand* (64 N. Y. 278, 281) became applicable. The court there says: " When a life estate is bequeathed in a sum of money, with remainder over, the legatee is entitled only to the income, and the principal, subject to the life estate, belongs to the remainderman, and, unless otherwise directed by the will, it is the duty of the executor either to invest the money and pay the interest to the first legatee during life, and preserve the principal for the remainderman, or, on paying it over to the legatee, to require security from him for the protection of the remainderman in respect to the principal." (See, also, *Tyson* v. *Blake*, 22 N. Y. 558, 561; *Matter of Hamlin*, 141 App. Div. 318, 329.)

Catherine Moran might have demanded that the executors turn

over to her a certificate for the ninety-six shares of stock, to be held by her during her life, but as a condition precedent to such delivery she should have been required to deposit with them adequate security assuring its return. Since, under the arrangement in which all parties acquiesced, she received every conceivable benefit which would have accrued to her by the adoption of such a course, it is not surprising that she preferred the procedure which was followed and which avoided this wholly futile trouble and expense.

The executors were in no sense trustees for her and a court of equitable jurisdiction will view the substance of the transaction, disregarding the particular terminology adopted. As the executors were not trustees for Catherine Moran, they will not be required to account in that capacity.

If the representatives of Catherine's estate feel that they have any rights against the corporation or its officers on any ground, an appropriate direct action in the Supreme Court is their proper remedy.

It is, therefore, found and decided that Catherine Moran had no interest in the ten shares of stock issued in her name prior to the decease of Michael Moran which survived her decease intestate, and that Eugene F. Moran and Henry Joseph Moran were not trustees for her and are, therefore, not required to account as such.

The objections are overruled.

Submit decree, on notice, accordingly.