In the Matter of the Estate of ELEANOR L. HILLIARD, Deceased.

Surrogate's Court, Kings County, March 27, 1935.

*Taylor & Roberts*, for Clinton F. Swimm.

*Sproull, Harmer & Sproull*, for the executors, respondents.

WINGATE, S.   This is a proceeding instituted under section 206-a of the Surrogate's Court Act to compel the delivery by executors of certain specified securities.   The facts are undisputed, wherefore the determination becomes a pure question of law.

By the "sixth" item of her will, dated October 12, 1934, the testatrix provided: "I am leaving with Franklin J. Myers, one of my Executors, a memorandum of what I wish done with certain items of personal property which I possess, and I direct that he dispose of these items according to said memorandum."

At some undisclosed time prior to her death, the decedent turned over to this Franklin J. Myers a certain envelope upon which was indorsed in the decedent's handwriting: "The contents are the personal property of Clinton F. Swimm."   Mr. Swimm is the present petitioner.   This envelope contained certificates for 315 shares of stock of various companies together with a memorandum in the handwriting of the decedent which read: "At my demise these certificates are to be given to my brother, Clinton F. Swimm if he be alive, and if not then to his wife, Elizabeth W. Swimm. No deduction for sale being made — to my estate — I wish either of them to have the principle.   I paid $11,000 to the National City Bank for these certificates.   Eleanor L. Hilliard."

It is alleged and not denied that the foregoing memoranda are the only ones left by the testatrix with Myers relating to disposal of personal property.   It is further alleged and not denied: "That on or about the 6th day of February, 1931, the decedent redeemed in her name from the National City Bank, Montague Street Branch, Brooklyn, New York, the said shares of stock which had been deposited with said Bank by your petitioner as security for a loan."

The relief prayed is that the executors show cause why the certificates should not be delivered to the petitioner.

The answer of the executors expressly admits the truth of the facts alleged, and continues: " The matter involved is a question of law and to the Executors it seems that it resolves itself into a question as to whether what was done by Mrs. Hilliard constituted an attempted testamentary disposition or an attempted gift *causa mortis.*"

The memorandum of the claimant is directed merely to the question of the validity of the transaction as a testamentary disposition, his sole legal reliance being based on the determinations of the Court of Appeals in *Matter of Fowles* (222 N. Y. 222) and *Matter of Rausch* (258 id. 327). Whereas the adoption of this course would appear to indicate an abandonment of any other potential basis for recovery, a brief examination of alternate possibilities for relief would seem not inappropriate.

The first, not noted in the answer of the executors, inheres in the allegation that the securities in question were redeemed by the decedent from the bank where they were hypothecated to secure a loan of the petitioner. If they were originally petitioner's property, it would ordinarily follow that after their redemption by the testatrix they would remain his, although undoubtedly subject to the same lien against them which existed during their retention by the bank. From this it would follow that the petitioner would be entitled to receive them only after payment or tender of the amount of the loan, neither of which conditions precedent has been alleged or intimated. Their recovery on this theory is, therefore, foreclosed on the facts alleged.

The second possible basis for relief is that the transaction disclosed amounted to a gift. Here, however, the difficulty of defect in delivery is encountered, it being primary that no such transaction may be consummated without as complete a divestment of the dominion of the donor and effectuation of that of the donee, as the circumstances will permit. (*Matter of Moran,* 136 Misc. 615, 625; *Matter of James,* 148 id. 124, 126, and authorities cited.) " While delivery may be made to a third party for and in behalf of the donee, yet handing the property to an agent of the donor to be delivered to the donee is not sufficient." (*Vincent* v. *Rix,* 248 N. Y. 76, 83.) This last is all which has here been demonstrated. The terms of the memorandum contained in the envelope contemplated at most alternative contingent gifts to be consummated by the agent of the donor subsequent to her death. As the powers of the agent terminated on the death of his principal, no effectuation of the transaction by this means was possible.

It follows that if the claim of the petitioner is to be effectuated, it must be by reason of the incorporation in the will of the unattested

holographic memorandum contained in the envelope. The basis of recovery upon which the applicant's right to recovery must finally rest is that there has been a valid incorporation by reference of this unattested memorandum into the terms of the will.

In evaluating this contention, five determinations of the Court of Appeals are of importance. The first is *Booth* v. *Baptist Church* (126 N. Y. 215). There the testator bequeathed a legacy of $10,000, payable in securities belonging to him, adding: " Among my papers will be found a memorandum of the various securities I have selected for the payment of the several legacies." Such a paper, in testator's handwriting, was found, specifying that the particular gift should be of 100 shares of a specified stock, and it was contended that this became a part of the will, transforming the gift from a general to a specific legacy. In overruling this contention, the court said (at p. 247): " It is unquestionably the law of this State that an unattested paper which is of a testamentary nature cannot be taken as a part of the will even though referred to by that instrument. * * * I am satisfied that this memorandum is testamentary in its character. By the will no specific securities were given as is fully conceded. The effect of the memorandum is more than an identification. * * * The office of the paper, if it shall operate at all, is to give specifically what was not so given by the will; to change its terms in a material respect; to alter a bequest and to modify the rights of the legatees. Such a paper, we think, cannot be received as a part of the will to affect and modify its terms."

In *Matter of Conway* (124 N. Y. 455) the factual showing was still stronger. The will was written on the usual blank form consisting of four pages, with the in testimonium clause at the bottom of the first. Certain gifts were inscribed in the blank page, at the end of which were written the words, " carried to back of will." On the back was written " continued," following which were various bequests, following which was written, " signature on face of the will." The document was signed and attested at the bottom of the first page. It was held that the document was void as not having been executed as required by the statute.

The first of the three cases which is cited as effecting a relaxation of the rule exemplified in these decisions and the earlier authorities of like tenor is *Matter of Piffard* (111 N. Y. 410). There the testator bequeathed one-fifth of his estate to a daughter, further providing that if she predeceased him it should be paid to the executor or trustee under her will. The validity of the gift to the latter was sustained.

In *Matter of Fowles* (222 N. Y. 222) testator gave a power of appointment over certain portions of his estate to his wife, providing that if they died under such circumstances that survivorship was unascertainable, he should be deemed to have predeceased her. The wife's will expressly executed the power of appointment in favor of named individuals. Both perished in the *Lusitania* disaster under circumstances rendering the fact of survivorship unascertainable. The majority of the court held the principle of the *Piffard* case applicable and that the effect of the husband's will was to make gifts to the individuals whose identity was determinable by the duly probated will of the wife.

The final and most recent pertinent authority is *Matter of Rausch* (258 N. Y. 327), in which a gift of one-fifth of the estate was made to " New York Trust Company of New York City, to be held by said Trust Company in trust for the benefit of my daughter Florence Skillings, under the same terms and conditions embodied in the Trust Agreement made between myself and the said New York Trust Company, dated April 15, 1922." The court held that this amounted merely to a gift to the trust company in its capacity as trustee of the specified trust, and that since this was in essence merely an identification of the intended recipient, the provision opened no avenue to chicanery or mistake and was consequently within the rule of the *Piffard* and *Fowles* cases.

As this court views the matter, the presently pertinent gist of the decision is contained in four sentences of the opinion (on pp. 331 and 333): " The rule against incorporation, well established though it is, is one that will not be carried to ' a drily logical extreme ' (*Matter of Fowles*, 222 N. Y. 222, 233). It is one thing to hold that a testator may not import into his will an unattested memorandum of his mere desires and expectations, his unexecuted plans (*Booth* v. *Baptist Church of Christ*, 126 N. Y. 215, 247). It is another thing to hold that he may not effectively enlarge the subject matter of an existing trust by identifying the trust deed and the extent and nature of the increment. ☼ * * Much will depend upon the extent to which the door is likely to be opened to chicanery or mistake if there is relaxation of the requirement of a self-sufficient integration."

If this be so, all five of the cases hereinbefore reviewed are good law today, and the last three cannot be deemed to have in any wise modified the doctrines of the others, especially since the *Rausch* case was at some pains to distinguish the situation in *Booth* v. *Baptist Church*. All that the *Piffard*, *Fowles* and *Rausch* cases expressly decided was that identified benefits under the wills of the respective testators were payable to persons whose identity

was ascertainable in two instances by reference to documents authenticated in the manner required·by section 21 of the Decedent Estate Law, and in the third by a solemnly executed ·existing document possessing the same effectiveness for a transfer of property *inter vivos* which a duly executed will possesses on death.

It is difficult to see how such determinations can be tortured into authorities for the effectuation of an entirely unauthenticated memorandum where the will itself is wholly silent as to the identity of the beneficiary or the *quantum* of his benefit, as in the case at bar. (*Matter of Chagnon*, DELEHANTY, S., N. Y. L. J. March 27, 1935, p. 1555.) A contrary holding would sweep away every safeguard attempted to be erected by section 21 of the Decedent Estate Law and of more than a century of judicial interpretation in its defense and would open wide the door to that chicanery and mistake which its provisions were intended to avoid.

The application is accordingly denied, with. costs.

Enter decree on notice.