In the Matter of the Judicial Settlement of the Accounts of Ann Matilda Piffard et al., as Executors, etc., of David Piffard, Deceased.

The will of P. gave to his daughter S. one-fifth of all his real and personal estate. By a codicil he directed that S. should have power by her will, " heretofore or hereafter " executed, to dispose of the share devised and bequeathed to her, and to that end he directed that such share should be paid over by his executors to the executors or trustees named in her will in case of her death during his lifetime, but in case she survived, then that such share should be paid over to her. S. died before the testator leaving a will. *Held*, that while the testator gave a power of appointment, which as a power the donee could not execute during the donor's lifetime, yet the further language of the codicil showed the testator's intent to be, in case of the happening of the contingency specified, to devise and bequeath by force of his own will the daughter's

Statement of case.

one-fifth to such person or persons and in such shares and proportions as she had directed or should direct in the disposition of her own property; that the will of the daughter could be referred to to define and make certain the persons to whom and the proportions in which the one-fifth should pass ; and that the executors of the will of P. were properly required to pay over that share to the executors of the will of S. for the· purposes of distribution.

(Argued October 22, 1888; decided November 27, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 22, 1886, which affirmed, so far as appealed from, a decree of the surrogate of the county of Livingston on settlement of the accounts of the executors of the will of David Piffard.    (Reported below, 42 Hun, 34.)

The provisions of the will, so far as material, are set forth in the opinion.    The testator's daughter, Sarah Eyre Piffard, one of the beneficiaries named therein, died before the testator, leaving a will.    The executors under a power of sale contained in the will sold the real estate ; the portion of the decree appealed from directed said executors to pay over to the executors of the will of said daughter Sarah the share given her.

*John R. Strang* for appellants.    The powers created, defined and regulated by 1 Revised Statutes 737, section 126, are in terms confined to "lands," but are now held applicable to personal property also.    (*Cutting* v. *Cutting*, 86 N. Y. 522; *Hutton* v. *Benkard*, 92 id. 296.)    There· is' no reference in the will of Sarah Eyre Piffard to the power, nor to the fund which is the subject of the power, and there is nothing in it from which any intent to execute the power can be inferred.    (*Winchell* v. *Hicks*, 33 N. Y. 383.)    It cannot be presumed that the testator's daughter intended to execute a power, of the existence of which she was ignorant, and which had no possible legal existence or operation until nearly three years after her will was made and two years after·

her own death. (*Jones* v. *Southall*, 32 Beav. 31, 38.) The intent to execute or not to execute the power of appointment must be gathered from the terms of the will and the circumstances surrounding it, like any other question of the testator's intent arising upon the construction of a will. (*Hutton* v. *Benkard*, 92 N. Y. 295, 301; *White* v. *Hicks*, 33 id. 383; *Wildbue* v. *Gregory*, 12 Law Rep. § 1482; 1 Jarman on Wills [5th Am. ed.] 676, note 1; Sugden on Powers [1st Am. ed.] 332; 2 Williams on Ex. [6th Am. ed.] 1212; *Jones* v. *Southall*, 32 Beav. 31, 38; *Quinn* v. *Hardenbrook*, 54 N. Y. 83, 89.) There must be an expression of an intent to make an independent bequest to the executors, in case of the death of the legatee, to prevent a lapse. (1 Roper on Legacies [2d Am. ed.] 466; *Thurber* v. *Chambers*, 66 N. Y. 42; *Bolles* v. *Bacon*, 3 Dem. 43.)

*Francis H. Wilson* for Emma M. Piffard, respondent. The testator's intention to dispose of all his property should be carried into effect, if that can be legally done by any reasonable mode of interpretation, and the court will prefer that interpretation which prevents either a total or a partial intestacy. (*Vernon* v. *Vernon*, 53 N. Y. 351.) The power conferred on Sarah Eyre Piffard, by her father's will, was executed by her will. (1 Jarman on Wills [Bigelow's ed.] 676, note 1; *White* v. *Hicks*, 33 N. Y. 383; *Hutton* v. *Benkard*, 92 id. 296; *Cutting* v. *Cutting*, 86 id. 522.) It became effectual at his death to vest rights that were inchoate at the time of her death. (1 R. S. 732, §§ 77–79.) The direction in the testator's will that his executors pay over to his daughter's executors this fifth share of his estate, violates no rule of law, and may operate as a gift to her estate without the execution of a power. (*Brown* v. *Clark*, 77 N. Y. 369, 375.)

*George F. Yeoman* for executors, etc., of Sarah Eyre Piffard, respondents. The will of Sarah Eyre Piffard was, in form, sufficient to dispose of all of the property that she had

power to dispose of, whether it was or was not her own prop-- erty. (1 R. S. 737, § 126; *Hutton* v. *Benkard*, 92 N. Y. 295, 304.) The fact that after, and in consequence of her death, David Piffard executed a codicil confirming the will and all former codicils, operated as a re-execution of them all. (*Brown* v. *Clark*, 77 N. Y. 369; Redf. on Surrogates [3d ed.], 227; 1 Jarman on Wills [R. & T. ed.], 28.) If two modes of interpreting a will are possible, that mode will be preferred which will prevent either a total or a partial intestacy. (Redf. on Surrogates, 255; *Vernon* v. *Vernon*, 53 N. Y. 351; *Lyman* v. *Lyman*, 22 Hun, 261.) Where the intention is plain upon the whole will, it is the duty of the court to subordinate the language to the intention. (*Philips* v. *Davies*, 92 N. Y. 199; *Wagner* v. *Wagner*, 96 id. 164; Redf. on Surrogates, 251.) If the will of Sarah Eyre Piffard did not bequeath this property, the will of David Piffard did bequeath it to those who are entitled, under her will, to her property. (*Chamberlain* v. *Hutchinson*, 22 Beav. 444; *Brickenden* v. *Williams*, L. R., 7 Eq. 309.)

FINCH, J. The testator, by his last will, duly executed, gave to his daughter, Sarah, one-fifth of all his real and personal property. The devise and bequest was absolute and without condition, and such as to vest in her a complete title to the property given. Of course such legatee and devisee, if she lived until her father's will took effect, would have the absolute ownership and power of disposition, and could transfer it by will to whomsoever she pleased. By a codicil made a few years later, the testator again referred to the devise and bequest to Sarah, and made a further provision relative thereto. It reads thus: " I do hereby direct that my said daughters, Sarah Eyre Piffard and Ann Matilda Piffard, named in my said will, shall have power, by their several wills heretofore or hereafter duly made and executed, to dispose of, devise and bequeath the share of my estate devised and bequeathed to them severally in and by my said will; and to that end I direct that such share or shares shall be paid

over by my said executors to the executors or trustees named in and by the several wills of my said daughters in case of the death of them, or either of them, in my lifetime, instead of to my said daughter or daughters; but if my said daughters shall survive me, then such shares shall be paid to them severally, as now provided in and by my said will." It seems to me impossible to misunderstand the purpose of this provision.

It was clearly intended to reach and cover a contingency which has actually occurred, and to prevent a lapse of the legacies by the death of a daughter in the testator's lifetime. To that event the provision of the codicil was confined, and only in that event could it be consistent with the absolute devise and bequest and essential to make it effectual. And while, to reach this result, the testator gave a power of appointment, which, as a power, the donee could not execute in her father's lifetime, because she could not herself dispose of what remained wholly in another's power and ownership, yet the further language of the codicil shows its intent to be that, in case of the death of the daughter in the lifetime of the father, the latter intended to devise and bequeath by force of his own will the daughter's one-fifth to such person or persons and in such shares and proportions as by an existing will, made before or after the date of the codicil, she had determined and directed or should determine and direct in the disposition of her own property; and "to that end," in aid of that result, he explicitly declares that the one-fifth given to her shall be paid over to her executors for the evident purpose of passing to her devisees and legatees that share precisely as if it had been her property at her death, and had become distributable as such by force of her will. And this view is very greatly strengthened by the fact that after her death leaving a last will, the testator, with full knowledge of the existing situation, made two other codicils, confirming his will and the provisions contained in it now in question.

While, therefore, it may not be possible to sustain the power of appointment as such, and so enable Sarah's devisees and legatees to take the one-fifth by force of her will, it is

possible to see in the will of the father a clear intent to prevent a lapse and avoid a partial intestacy by carrying over the one-fifth which she did not take, through her executors, to those whom she should name as devisees and legatees of her property, and in the proportions by her directed. Her will, therefore, is referred to, not as transferring the property by an appointment, but to define and make certain the persons to whom and the proportions in which the one-fifth should pass by the father's will in case of the death of the daughter in his lifetime. What she would have done by her will but could not, that he did for her by his own will.

This was the construction adopted by the General Term, and we concur in it.

The judgment should be affirmed.

All concur.

Judgment affirmed.