## KING et al. v. LOWRY.

### No. 4250.

Court of Civil Appeals of Texas. Amarillo. Feb. 4, 1935.

Rehearing Denied March 11, 1935.

E. C. Gray, of Higgins, and W. L. Houts, of Alva, Okl., for appellants.

Hoover, Hoover & Cussen, of Canadian, for appellee.

HALL, Chief Justice.

This is a suit by Maude L. Lowry against Edson E. King, Mrs. E. C. Van Aernam, Nellie Secrest, a widow, Joseph H. Wood, C. E.. C. S., and Ralph Wilson, as defendants. to engraft a trust upon certain property which plaintiff claims was purchased with the proceeds of other property once owned by plaintiff's aunt, Mrs. Minnie M. Wade, and now claimed by the said defendants through several deeds executed by Mrs. Alpha E. Wood, the devisee of part of the property under the will of Mrs. Wade.

It appears that on the 11th day of December, 1924, Mrs. Minnie M. Wade, a married woman, the aunt of plaintiff and the sister of Mrs. Alpha E. Wood, and while residing in the state of Missouri, executed her will; that thereafter, on the 10th day of January, 1928, she executed a codicil to her said will. The provisions of said will and codicil material to the disposition of this appeal are as follows:

"(3) I give all of my wearing apparel and jewelry to my sister, Alpha E. Wood, to keep or dispose of as she thinks best, but I desire that she shall give my wrist watch to the eldest then living daughter of Mrs. Frank Stockwell.

"(4) I give to my niece, Maude L. Lowry. the sum of Two Thousand ($2,000.00) Dollars, which I desire shall be paid to her as soon as possible after my death."

These provisions are followed by certain devises and bequests to Mrs. Van Aernam, Mrs. Secrest, Edson E. King, and the Wilsons. The will further provides: "(9) I give to my sister Mrs. Alpha E. Wood, if she be then living, one-fourth of the entire remainder of my estate."

By other provisions the remaining one-fourth of the residuary estate is given to other relatives.

This material provision is in the codicil: "(1) In addition to what I have given to my sister Alpha E. Wood, I desire that if she be then living [at my death] she shall have my La Vita Hall property at 3409 Wyandotte [Street, in Kansas City]."

The will was duly probated in Jackson county, Mo., and there was no administration upon the estate.

Mrs. Lowry sued to engraft a trust in her favor upon the property, alleging, in substance, that the testatrix, Mrs. Wade, died without having revoked either the will or the codicil, and at the time of her death, October 18, 1928, was the owner of, and in possession of, La Vita Hall. It is further alleged that plaintiff was a cripple, a widow with one child, and for several years prior to the death of her aunt, Mrs. Wade, was dependent upon her for support and maintenance; that, in order to provide for the support and maintenance of plaintiff, Mrs. Wade agreed with Mrs. Wood that she would devise to Mrs. Wood the La Vita Hall property and lots upon which it was situated, if Mrs. Wood would support and maintain plaintiff out of the rents and revenues of said property, contributing to that end at least the amount of $50 per month; that Mrs. Wood so agreed, and in accordance with the agreement Mrs. Wade devised and bequeathed the La Vita Hall property to Mrs. Wood, which would not otherwise have been done; that by reason thereof the property became charged with a trust impressed thereon for the support, care, and maintenance of plaintiff. It is further alleged that Mrs. Wood accepted the property and proceeded to execute the trust after the death of Mrs. Wade.

It appears that only a one-half interest in the La Vita property passed to Mrs. Wood by reason of the fact that the husband of Mrs. Wade, who survived her, executed his option and accepted under the laws of Missouri rather than under the will, and thereby became the owner of the other one-half undivided interest in the property.

It is further alleged that, after the will had been probated, Mrs. Wood sold the La Vita Hall property, about December 1, 1930, realizing therefrom the sum of $5,436.14, which said sum was also impressed with the trust for plaintiff's benefit, that Mrs. Wood then moved to Texas with said money and invested it in the following described property in the town of Follet, Lipscomb county: All of lots Nos. 10, 11, and 12 in block 19; all of outlot No. 48; all of lots Nos. 1 and 2 in block No. 5 and lots Nos. 1 and 2 in block No. 6 in said town, and that thereby said real estate became impressed with said trust in favor of plaintiff to the extent of $5,436.14. It is further alleged that Mrs. Wood recognized the existence of said trust and for a certain period paid $50 a month to plaintiff after the death of Mrs. Wade; that thereafter Mrs. Wood, being a widow and without children, conveyed by deeds the above-described prop-

erty as follows: Lots 10, 11, and 12 in block 19 to Mrs. Van Aernam; outlot No. 48 and lot No. 1 in block No. 5 to Edson E. King; the south 25 feet of lot 1 and the north 10 feet of lot 2 in block 6 to Joseph A. Wood; all of lot No. 2 in block 5 to Mrs. Secrest; that said conveyances were made by Mrs. Wood in contemplation of death and without any consideration paid or to be paid to her, wherefore said property is now being held by the grantees in said deed for the use and benefit of plaintiff.

It is further alleged that Mrs. Wood died on or about the ———— day of August, 1932, intestate, leaving as her only heirs at law Mrs. Van Aernam, a sister, Edson E. King, a brother, Nellie Secrest, a niece, C. E., Ralph and C. S. Wilson, nephews, and plaintiff, a niece; that no administration was ever had on the estate of Mrs. Wood.

The defendants answered jointly by general demurrer, eight special exceptions, general denial, and further pleaded that no promise in writing was made by Mrs. Wood to Mrs. Wade and no action taken by Mrs. Wood and Mrs. Wade, or either of them, whereby a trust was created, and, if any promise was ever made by Mrs. Wood to pay plaintiff anything, it was purely a donation and wholly without consideration, and, if any sum was paid, it was not in recognition of any trust relation. Failure of consideration was then pleaded. They further specially alleged that La Vita Hall was situated in Jackson county, Mo.; that Mrs. Wade resided in said state and county; that her will and codicil were executed there and said instrument was probated in said county after her death. Defendants specially pleaded section 2967 of article 2 of chapter 17 of the Revised Statutes of Missouri 1929 (Mo. St. Ann. § 2967, p. 1835), which shows substantially the same provisions as article 3995 of the Revised Statutes of Texas, in so far as the same is applicable to the facts of this case. Defendants further pleaded section 3104 of article 4 of chapter 22 of the Revised Statutes of Missouri 1929 (Mo. St. Ann. § 3104, p. 1928), as follows:

"Declarations of Trust to be in Writing or by Will

"All declarations or creations of trust or confidence of any lands, tenements or hereditaments shall be manifested and proved by some writing signed by the party who is, or shall be, by law, enabled to declare such trusts, or by his last will, in writing, or else they shall be void, and all grants and assignments of any trust or confidence shall be in

writing, signed by the party granting or signing the same, or by his or her last will, in writing, or else they shall be void."

The case was tried to the court without a jury. Testimony was introduced tending to prove an oral agreement between the testatrix, Mrs. Wade, and Mrs. Wood, to the effect that, if Mrs. Wade would devise enough property to Mrs. Wood to enable the devisee to provide for the plaintiff in her helpless condition, not to exceed $50 per month, Mrs. Wood would pay or remit to plaintiff said amount. There was oral testimony and letters written by Mrs. Wood to plaintiff from which it might be inferred that a verbal trust as insisted upon by plaintiff had been created, but there is nothing in the will which even tends to show the creation of any such trust; neither is there any other writing signed by Mrs. Wade to that effect.

The court filed findings of fact and conclusions of law. The material finding is that a trust was created and shown by conversations between Mrs. Wade and Mrs. Wood, which resulted in Mrs. Wade devising La Vita Hall to Mrs. Wood in consideration of her promise to provide for the necessities and maintenance of plaintiff, at least to the extent of $50 per month, such provision to be made from the rents and revenues to be received by Mrs. Wood from the property; that Mrs. Wood, by making certain monthly payments to plaintiff and by admissions in her letters to plaintiff, had acknowledged the creation and existence of a trust, and was estopped to deny the right of plaintiff as to cestui que trust. He found that prior to the time of her death Mrs. Wood had paid plaintiff $975 in monthly installments, and was $1,280 in arrears on said payments at the time of her death, and concluded as a matter of law that plaintiff was entitled to receive from the estate of Mrs. Wood the sum of $50 a month from the 19th day of September, 1933, until the death of plaintiff, not to exceed, however, the total sum of the balance due her of $2,-484.48, and further concluded that plaintiff had a valid lien on two promissory notes belonging to Mrs. Wood at her death and upon the real estate which Mrs. Wood had transferred to the defendants in contemplation of death.

Based upon the findings, the court entered judgment in favor of plaintiff decreeing the amount due her at that time to be $1,976.66, with 6 per cent. interest from that date until paid. He further decreed that the sum of $50 per month would be due her until the trust was terminated by the death of plain-

tiff, not to exceed said sum of $2,484.48. No personal judgment was rendered against any of the defendants, but execution was awarded and directed to be levied upon the lots which had been conveyed to defendants, and it was further ordered that such property be sold, the judgment for $1,976.66 and interest be paid, and the remainder, if any, be deposited by the sheriff in the registry of the court subject to the further orders of the court.

The appellants present the case here upon thirty-four assignments of error. The first propositions relate to the alleged error of the trial court in overruling the general and numerous special exceptions to the petition. The principal objection urged is that the plaintiff failed to attach the will or a copy thereof to the petition. It must be admitted that the petition would have been more complete if a copy of the will had been attached as an exhibit, but the error, if any, in overruling these exceptions, we hold is harmless.

It is said in Golden v. Odiorne, 112 Tex. 544, 249 S. W. 822, 825, that under district and county court rule 17, providing that, in passing on a general exception to a pleading, every reasonable intendment should be indulged in favor of its sufficiency, a petition is only subject to general exception when, after every construction favorable to its sufficiency is indulged, it either fails to allege some element essential to the cause of action or affirmatively negatives plaintiff's right to recovery. The court further said: "Where the trial court commits an error of law in overruling a special exception, the petition being good as against a general demurrer, but on the trial the judgment rendered is such as plaintiff was entitled to recover on the merits. Court Rule 62a (149 S. W. x) requires the judgment to be affirmed, unless defendant shows the improper ruling resulted to his prejudice, as by showing surprise or inability to present his evidence."

It is disclosed by the record that appellants were familiar with the will and its provisions. There is no claim that appellants were surprised when the will was introduced in evidence or that they have been deprived of any substantial right by the failure of the plaintiff to attach a copy of the will as an exhibit to her petition.

As said in 3 Tex. Jur. 1254: "The improper overruling of a special exception may or may not be prejudicial and the burden of showing prejudice is cast upon appellant."

This rule has been universally followed. Cabaniss v. Grayburg Oil Co. (Tex. Civ. App.)

50 S.W.(2d) 437; Traders' & General Insurance Co. v. Hurst (Tex. Civ. App.) 55 S.W. (2d) 1057.

However, according to the view we take of the case as made by the pleadings and the evidence, practically all of the propositions urged by appellants are immaterial, except the contentions that the court erred in rendering judgment without sufficient testimony to support it.

■ The general rule is that the disposition of real property, whether by deed, descent, will, or other mode; and usually questions of title, are exclusively subject to the law of the place where the property is situated. As said by the Supreme Court of the United States in De Vaughn v. Hutchinson, 165 U. S. 566, 570, 17 S. Ct. 461, 462, 41 L. Ed. 827, 829: "It is a principle firmly established that to the law of the state in which the land is situated we must look for the rules which govern its descent, alienation, and transfer, and for the effect and construction of wills and other conveyances."

As said in 1 Honnold, Supreme Court Law, 474: "It is a doctrine firmly established that the law of a state in which land is situated controls and governs its transmission by will or its passage in case of intestacy."

This is the rule which obtains in Texas and is stated in 9 Tex. Jur. 359, § 8, as follows: "It is the settled doctrine of the common law that real property is exclusively subject to the laws of the government within whose territory it is situated. Hence, as a general rule, title to land can be affected only by the lex loci rei sitæ, and this law is to be referred to for the purpose of determining the validity of every transfer or disposition of real estate, whether by deed, will, descent or judicial proceedings. The laws of the country or state where the property is located also govern exclusively the construction and effect of all instruments intended to convey it."

■ The language of the Missouri statute, section 3104, art. 4, c. 22 (Mo. St. Ann. § 3104, p. 1928), which render void any attempt to create a trust upon lands other than by writing signed by the party who is declaring such trust, is so plain and unambiguous that no question can arise as to its construction and application to the facts of the instant case. Its provisions are conclusive of the rights of the parties hereto. All oral testimony introduced for the purpose of establishing a verbal trust and all writings signed by Mrs.

Wood were inadmissible and incompetent and could not be taken into consideration by the court. There being no written evidence signed by Mrs. Wade which tends in the slightest degree to show an intent on her part to create the trust claimed to exist in this case, and the will itself being devoid of any suggestion relating to it, the judgment is erroneous.

We deem it unnecessary to consider any other assignment or proposition urged by either party.

The judgment is reversed and is here rendered that the plaintiff take nothing.