Louise WELCH, a Feme Sole, et al.,
Appellants,

v.

TRUSTEES OF the ROBERT A. WELCH
FOUNDATION et al., Appellees.

No. 15709.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Jan. 14, 1971.

On Rehearing March 4, 1971.
Second Rehearing Denied March 25, 1971.

M. C. Chiles, Reynolds, White, Allen & Cook, Stanley B. Binion, Houston, for appellants.

Andrews, Kurth, Campbell & Jones, Alfred H. Ebert, Jr., Houston, attorneys for appellee Humble Oil & Refining Company.

John Held, Harold Metts, Houston, Crawford C. Martin, Atty. Gen., Z. T. Fortescue, III, Asst. Atty. Gen., Austin, for appellees. Baker, Botts, Shepherd & Coates, Houston, of counsel.

COLEMAN, Justice.

This is an appeal from a summary judgment by which the trial court decreed that

the will of Sarah Linda Welch effectively passed title to certain oil and gas royalty interests to named individuals "as trustees and successor trustees under the will of Robert A. Welch and of the Robert A. Welch Foundation," and that they recover title to and possession of the royalty interests and the accumulated income, rents, revenue and royalties attributable to the described royalty interests. Motions for summary judgment filed by various appellants were denied.

At the time of her death Sarah Linda Welch had an estate valued at a sum exceeding one million dollars. She was a life long resident of South Carolina. Included in her estate were certain mineral interests in lands located in Texas. This land was part of the Hastings Oil Field and the income from the royalty interest accumulated at the time of the trial of this case amounted to approximately $300,000.00.

Sarah Linda Welch was the sister of Robert A. Welch, who resided in Houston, Texas, and who handled all of her business affairs. He had accumulated great personal wealth and the investments which he made for his sister resulted in the sizable estate which she had accumulated.

Robert A. Welch had his lawyers prepare wills for himself and for his sister. His will was executed in Houston, Texas, on March 19, 1948. The will of his sister was executed in South Carolina on December 27, 1949. Robert A. Welch executed four codicils to his will, the final one dated December 27, 1952. He set up an inter vivos charitable trust funded with a gift of $10,000.00. The will of Sarah Linda Welch provided that this trust should receive all of her property in the event she predeceased her brother. Robert A. Welch died on December 27, 1952. In his will he created a trust, now known as the Robert A. Welch Foundation, and it received 85% of his estate valued at approximately $30,-000,000.00. The inter vivos trust was merged into the testamentary trust.

The particular provision of the will of Sarah Linda Welch with which we are concerned reads:

"If at the time of my death my said brother shall have died leaving a will, duly probated, by which property is devised and bequeathed to trustees for charitable purposes, then it is my will and I so direct that in lieu of the devise and bequeath contained in the preceding Article II all of said rest and residue of my property shall be devised and bequeathed to said trustees named in my said brother's will upon the same terms and conditions, for the same uses and purposes, and subject to the same limitations and restrictions as if the language in my said brother's will creating said trust and setting forth said terms and conditions, said uses and purposes and said limitations and restrictions, were copied at length herein with appropriate changes to make them a part of my will."

The will was admitted to probate in South Carolina and has also been probated in Harris County, Texas. A contest of the will and an action to construe the will were filed in South Carolina and the cases were tried together by agreement. The Trustees of the Foundation were parties to the action. In South Carolina National Bank of Charleston v. Copeland, 248 S.C. 203, 149 S.E.2d 615 (1966), the court upheld the action of the trial court in admitting the will to probate. However the court construed the paragraph of Miss Welch's will previously quoted as an attempt on her part to incorporate the trust provisions of the Robert Welch will into her will as the terms of a trust established by her. The court then held that such attempt to establish a trust failed because the terms thereof were not effectively declared, and that the estate was distributable as intestate property.

Appellants make two basic attacks on the judgment entered here. The first involves *res judicata*, law of the case, full faith and credit, and comity. The second involves

the proper construction to be given the will and the propriety of resolving this case at a summary judgment hearing.

■ The general rule that the law of the state in which real estate is situated governs its descent, alienation and transfer is not questioned. Appellants contend that since the Foundation and its trustees have invoked the jurisdiction of the courts of South Carolina for the purpose of securing a construction of the will, they are bound by the construction placed on the will. This proposition was rejected by the Supreme Court of the United States in Clarke v. Clarke, 178 U.S. 186, 20 S.Ct. 873, 44 L.Ed. 1028 (1900), wherein the Court stated:

" * * * It is conceded that had the will been presented to the courts of Connecticut in the first instance and rights been asserted under it, that the operative force of its provisions upon real estate in Connecticut would have been within the control of such courts. But it is said a different rule must be applied where the will has been presented to a South Carolina court and a construction has been there given to it; for, in such a case, not the will, but the decree of the South Carolina court construing the will, is the measure of the rights of the parties as to real estate in Connecticut. The proposition, when truly comprehended, amounts but to the contention that the laws of the respective states controlling the transmission of real property by will, or in case of intestacy, are operative only so long as there does not exist in a foreign jurisdiction a judgment or decree which in legal effect has changed the law of the situs of the real estate. This is but to contend that what cannot be done directly can be accomplished by indirection, and that the fundamental principle which gives to a sovereignty an exclusive jurisdiction over the land within its borders is in legal effect dependent upon the nonexistence of a decree of a court of another sovereignty determining the status of such land.

Manifestly, however, an authority cannot be said to be exclusive, or even to exist at all, where its exercise may be thus frustrated at any time. These conclusions are not escaped by saying that it is not the law of Connecticut which conflicts with the interpretation of the will adopted by the South Carolina court, but the decision of the court of Connecticut which does so. In this forum, the local law of Connecticut as to real estate is the law of that state as announced by the court of last resort of that state."

The proposition urged has also been rejected by the Supreme Court of Texas, in Toledo Society for Crippled Children v. Hickok, 152 Tex. 578, 261 S.W.2d 692 (1953), wherein the court stated:

"Assuming, for purposes of discussion, that we are dealing with the simple case of an Ohioan, who dies seized of Texas lands free of any obligation to sell, and whose will makes an ordinary devise of a remainder in such lands to beneficiaries such as the Toledo Society for Crippled Children, it is not disputed or disputable that under proper principles of the Conflict of Laws the validity of the devise is to be determined by reference to Texas law (which permits it) and not by the domiciliary statute (which forbids it). Restatement, Conflicts, Sec. 249; Goodrich on Conflict of Laws, (3rd Ed.) Sec. 166; * * *.

"Our courts, by reason of their ultimate power over lands situated within our state, no doubt have the *jurisdictional* authority in a given case to vary the above rule and apply the domiciliary law in preference to our own, if they should find compelling reasons so to do. * * * The mere fact that the courts of Ohio happen to have acted first in the matter is no more persuasive to us than the converse situation would be to the Ohio courts, assuming the 'full faith and credit' clause not to be applicable. * *

"As a consequence of the basic rules above mentioned, courts of a state, which

is *not* the situs of the land involved in a questioned devise, or devise in trust, are, generally speaking, without right to apply a law different from that of the situs, and their judgments assuming such a right are not protected by the 'full Faith and Credit' clause of the Federal Constitution, art. 4, § 1."

It is proper, therefore, for the courts of Texas to examine the questioned devise to determine whether it was effective to pass title to the interests in real estate situated in Texas owned by the testator at the time of her death. The courts are not confined to the statutes of this state in determining the applicable law, but must also consider the decisions of the courts of this state declaring the common law. Humble Oil & Refining Company v. Copeland, 398 F.2d 364 (C.A. 4th Cir. 1968).

Our decision that the determination of this question must be made in the courts of this state is strengthened by a consideration of these provisions of Art. 4412a, Vernon's Ann.:

"Sec. 2. For and on behalf of the interests of the general public of this state in such matters, the Attorney General shall be a necessary party to and shall be served with process, as hereinafter provided, in any suit or judicial proceeding, the object of which is:

" * * *

"c. To construe, nullify or impair the provisions of any instrument, testamentary or otherwise, creating or affecting a charitable trust, * * *.

"Sec. 4. A judgment rendered in any suit or judicial proceeding referred to in this Article without service or process upon the Attorney General shall be void and unenforceable. Any such judgment shall be set aside upon motion of the Attorney General filed at any time thereafter."

If the courts of this state are concluded by the construction placed on a devise, purporting to pass title to interests in real estate situated in Texas to a charitable trust, by the courts of a foreign state, this statute would be largely ineffectual and the public policy evidenced by this statute would be defeated in part.

The cardinal principle to be observed in construing a will is to harmonize and give effect to all provisions of the instrument, if possible, but if there is in the instrument inherent conflict of intention, then the main intention shall have controlling influence. The intention of the testator must be determined from the language of the instrument and the circumstances surrounding its execution. Cutrer v. Cutrer, 162 Tex. 166, 345 S.W.2d 513, 86 A.L.R.2d 105 (1961); Coffee v. William Marsh Rice University, 408 S.W.2d 269 (Tex.Civ.App.—Houston, 1st Dist., 1966, writ ref., n. r. e.).

The search is not for the subjective intention of the testator resulting in the execution of the instrument, but rather is for her intention as evidenced by the language used, a legal question.

The Supreme Court of South Carolina recognized that Miss Welch was attempting to declare a charitable trust. It held that the attempt failed because the terms of the trust were not effectively declared. South Carolina National Bank of Charleston v. Copeland, supra. Miss Welch attempted to incorporate into her will the terms of the charitable trust contained in her brother's will, including the names of the trustees thereof. She failed to refer specifically to the will previously executed by her brother. The wording of her will referred to any will executed by her brother which was probated as his last will. Since a will is ambulatory, such an instrument cannot be incorporated into the will of another without a specific reference to the instrument as being then in existence. The attempted incorporation by reference failed. Curley v. Lynch, 206 Mass. 289, 92 N.E. 429 (1910); Howell v. Moore, 14 Tenn.App. 594 (1932); Clark v. Citizens

National Bank of Collingswood, 38 N.J. Super. 69, 118 A.2d 108 (1955); Bailey, Texas Practice—Texas Law of Wills, Sec. 385, p. 14.

Nevertheless, from the language used in the will, and without reference to the provisions of the will of Robert A. Welch, an intention to leave the property in question to trustees for charitable purposes is evident.

■ A will attempting to establish a general charitable trust is not invalid by reason of the failure to specify the charities which are to be benefited. Boyd v. Frost National Bank, 145 Tex. 206, 196 S. W.2d 497, 168 A.L.R. 1326 (1946). Neither will an intended charitable trust be invalidated by reason of the failure of the testator to name trustees. Taysum v. El Paso National Bank, 256 S.W.2d 172 (Tex. Civ.App.—El Paso 1952, writ ref.).

The trial court has the authority to appoint trustees to frame a scheme, with the approval of the court, to effectuate the intention of the testatrix and to administer the trust. Wilson v. Franz, 359 S.W.2d 630 (Tex.Civ.App.—El Paso 1962, writ ref.).

The trial court was in error in granting the appellees' motions for summary judgment and in decreeing that the trustees under the will of Robert A. Welch and of the Robert A. Welch Foundation owned the property in question. The court did not err in overruling appellants' motion for summary judgment.

Reversed and remanded.

## On Motions for Rehearing

Motions for rehearing have been filed contending that this court is in error in reversing this case with directions that the trial court name trustees and frame a scheme to effectuate the intention of the testator Sarah Linda Welch. On reconsideration we have determined that we were in error in holding that the bequest to the trustees named in the will of Robert A.

Welch failed. In all other respects we adhere to the conclusions expressed in our original opinion.

It appears from the will of Miss Welch that she intended to leave her property in trust for charitable purposes to the trustees named in her brother's will if on the date of her death he had died leaving a valid will creating such a trust and naming trustees. The fact that the devise was made contingent does not affect its validity or effectiveness as a conveyance since the event on which the devise was conditioned had occurred. 61 Tex.Jur.2d, Wills, § 252.

■ We reaffirm our conclusion that the law of this state controls and governs the transmission by will of real estate located therein and the construction and effect of all instruments intended to convey such real estate. King v. Lowry, 80 S.W. 2d 790 (Tex.Civ.App.—Amarillo 1935, error ref.). The question of whether the testator intended to create a foreign trust and to devise the land to it instead of devising the land to an existing Texas trust would seem to be hypothetical. A "trust" is a right of property held by one party for the benefit of another. The property was devised to the trustees not to the trust. If a valid trust is not established by the terms of the will, the devise is ineffectual. Whether property passes under a will or by descent and distribution, the title vests immediately upon the death of the owner. Zahn v. National Bank of Commerce of Dallas, 328 S.W.2d 783 (Tex.Civ.App.— Dallas 1959, error ref., n. r. e.).

■ It has long been the law of this state that property may be devised to a class of persons, such as children living at the date of the death of the testator, or children, including those born after the execution of the will, or first cousins. The names of those who take under the will may be supplied by parole evidence. Bristol v. Mazza, 288 S.W.2d 564 (Tex.Civ. App.—Ft. Worth 1956, ref., n. r. e.).

The testator intended to leave her property for charitable purposes to the trustees named, or to be named, by her brother in his will. The best evidence of the identity of those persons would be the brother's will.

In Scott on Trusts, 2nd Ed., 1956, §§ 54.2 and 54.3, pp. 365–367, Professor Scott says:

"There is another doctrine of the law of Wills, which is frequently confused with the doctrine of incorporation by reference. Even though a disposition cannot be fully ascertained from the terms of the will, it is not invalid if it can be ascertained from facts which have significance apart from their effect upon the disposition in the will. Indeed it is frequently necessary to resort to extrinsic evidence to identify the persons who are to take or the subject matter of a disposition. Thus a bequest to the children or the heirs or next of kin of a named person requires a resort to extrinsic evidence to establish their identity, but it is of course valid. So also a disposition in favor of persons who are in the employ of the testator at the time of his death, or a disposition in favor of such person or institution as may care for the testator during his old age or last illness, is valid * * * On the other hand, the disposition is invalid where the facts from which it is to be ascertained have no independent significance; thus a disposition in favor of such persons as may be named in an unattested memorandum, or such property as may be designated in such a memorandum, is invalid, since the designation in the memorandum has no significance apart from the disposition of the property by the will * * *"

For other discussions of this doctrine, see Professor Scott's article, 43 Harvard Law Review, 551; Page on Wills, § 19.34, pp. 120–121; Atkinson on Wills (2nd Ed., 1953), pp. 395–396; American Law Institute, Restatement of the Law of Property, § 348(e) and (f), p. 1938; article by Dean Alvin Evans, 25 Columbia Law Review 898.

In Ragland v. Wagener, 142 Tex. 651, 180 S.W.2d 435 (1944), the court said:

"The devise as a whole is made dependent upon the testator's executing the deed and placing the same with the will in his private box. This was an act the testator might or might not do at his own volition. Whether he did so hinged upon the state of his mind in the future. There was something remaining for him to do to complete the devise which was conditioned, not upon the happening of an independent contingency or the fulfillment of a condition, but upon the mental attitude of the testator to be thereafter formulated by him. To be effective as a will the testator must not depend upon some further voluntary act of his own to complete it, and the instrument must appear so final as to have left no part of the testator's intention unexpressed. 68 C.J. 638, Sec. 264. At the time the testator executes the instrument he must have his mind made up as to the final disposition of his estate. He cannot by his will prospectively create for himself a power to dispose of his property by a later instrument not duly executed under the formalities and solemnities required of a will or codicil."

In Huffman v. Huffman, 161 Tex. 267, 339 S.W.2d 885 (1960), this language appears: " * * * The very purpose of requiring a will to be in writing is to enable the testator to place it beyond the power of others, after he is dead, to change or add to his will or to show that he intended something not set out in, or different from, that set out in his will."

The general rule of law favoring wills is discussed by Justice Speer in Ellison v. Ellison, 164 S.W.2d 775 (Tex.Civ.App.—Ft. Worth 1942, ref., w. o. m.), where he states:

"The law favors wills. * * * They will be liberally construed to effectuate

the primary and dominant purposes and intentions of the testator. Courts will, if possible, discover the real intention of the testator, from the language used by him in his testamentary document, and give effect to those expressed intentions. The applicable rules of construction are that the instrument as a whole will be considered, rather than isolated clauses, phrases or even paragraphs. * * * If there is no ambiguity in the will, testator's true intention will be gathered from the instrument alone; if testator's dominant purpose is made clear by the language used, but the means of accomplishing that end is rendered uncertain and susceptible to more than one meaning, then and only then may the court look to conditions and circumstances surrounding the testator when he expressed his desires; * * *."

The dominant purpose and intention of Miss Welch is clearly set forth in her will. She desired to leave her property in trust for charitable purposes. As a means of accomplishing this end she named as her trustees the trustees named, or to be named, by her brother in his will and stated her intention that the property devised to these trustees should be administered by them on the same terms and conditions, for the same uses and purposes, and subject to the same limitations and restrictions as were imposed on the trustees by the terms of her brother's will.

By permitting reference to the brother's will for the purpose intended by the testator we do not permit the brother to change or add to the will of the sister. We are effectuating the intent of the sister. In most cases where public charitable trusts are created by will, the trustee selects the particular person or project to be helped, and determines the amount of money or property to be devoted to a particular charitable use. It is not uncommon that great discretion be given the trustee in selecting the means to be used to accomplish the desired end.

Nothing depended on Miss Welch's "mental attitude—to be thereafter formulated" to complete the devise. She had completely expressed her wishes as to the final disposition of her estate. The restrictions on the power of the trustees, and directions for its exercise, are found in her brother's will. It would seem that a case such as this should give the courts less difficulty in carrying out the intention of the testator than a case such as Wilson v. Franz, 359 S.W.2d 630 (Tex.Civ.App.—El Paso 1962, writ ref.), where the testator without naming a trustee merely expressed her intention that a certain portion of her estate be shared with the blind and crippled; that other named property should go to "needed charity", and certain land to "most needed charity".

No Texas cases have been cited us where the court has discussed by name the doctrine of facts of independent significance, but in many cases the doctrine has been applied in order to identify the beneficiaries who are to take or the amount or nature of the property given. Page on Wills, supra; 38 A.L.R. 775.

■ In the recent case of Wilson v. Phillips, 459 S.W.2d 212 (Tex.Civ.App.—Ft. Worth 1970, n. w. h.), a devise was upheld where a wife left her estate to the trustees named in her husband's will "(and in any codicil or codicils thereto)" to "be handled and disposed of by said Trustees" as provided in the husband's will. In that case, as in this, it is necessary to resort to the will of another person to learn the identity of the trustees and the directions for the administration of the trust. This may be done when it is considered that the directions and the names are facts of independent significance. The will of Robert A. Welch was not executed for the purpose of expanding or explaining the will of Sarah Linda Welch. The facts to be found in his will have significance apart from their incidental effect on the disposition of the property of Miss Welch. The will of Robert A. Welch was not incorpo-

rated into the will of Sarah Linda Welch, but it could properly be referred to for the purpose of identifying the trustees and learning the procedure by which they were to be guided in carrying out their trust. In Re Piffard, 111 N.Y. 410, 18 N.E. 718 (1888); In Re Fowles' Will, 222 N.Y. 222, 118 N.E. 611 (1918); In Re Rausch's Will, 258 N.Y. 327, 179 N.E. 755 (1932); Condit v. De Hart, 62 N.J.L. 78, 40 A. 776 (1898).

The motion for rehearing of the trustees and successor trustees under the will of Robert A. Welch and of the Robert A. Welch Foundation is granted. All other motions for rehearing are overruled.

The judgment of the trial court is affirmed.