**J. P. FUQUA, Appellant,**

v.

**P. V. FUQUA, Jr., et al., Appellees.**

**No. 1708.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Nov. 23, 1977.

Rehearing Denied Dec. 21, 1977.

Bill M. Payne, Lawrence, Thornton, Payne & Watson, Bryan, for appellant.

Kenneth H. Keeling, W. T. Bennett, Bennett & Keeling, Huntsville, Eugene J. Pitman, DeLange, Hudspeth, Pitman & Katz, Houston, Robert D. Brewton, Navasota, for appellees.

COULSON, Justice.

This is an appeal from a judgment distributing the proceeds from the sale of realty. Since this appeal constitutes a collateral attack on an earlier decision of this court, we affirm.

This is another facet of a matter previously before this court. In an earlier decision we held that the deed from Birdie H. Fuqua to Selected Lands Corporation (SLC) was valid and that SLC was the owner of the property in issue. *Fuqua v. Fuqua*, 528 S.W.2d 896 (Tex.Civ.App.-Houston [14th Dist.] 1975, writ ref'd n. r. e.). The current appeal deals with the proceeds from the sale, a point severed from the earlier action. Since our previous decision details the background of this case, it is sufficient to note that the trial court held that the proceeds should be divided equally among the three sons.

Although he brings three points of error, the appellant, J. P. Fuqua, has but one true contention: Birdie Fuqua owned realty, not personalty, on the day she died. He brings this despite our earlier holding that she did

not own the realty, and that SLC acquired title by relation back as of the date the deed was placed in escrow. We hold that this appeal is an impermissible collateral attack on our earlier decision.

Affirmed.

J. CURTISS BROWN, Chief Justice, dissenting.

I respectfully dissent. I am convinced that the majority opinion leads to an unjust and improper result; it employs a legal fiction to defeat the legitimate expectations and understandings of the parties.

A full appreciation of my position on this matter requires a chronological review of the events involved:

1. On September 26, 1962 P. V. Fuqua, Sr. and his wife, Birdie H. Fuqua, executed a joint will giving the survivor a life estate in 200 acres of land in Grimes County, Texas, remainder in fee simple to their son, J. P. Fuqua (appellant).

2. Sometime before August 16, 1966 P. V. Fuqua, Sr. died. His will was never admitted to probate.

3. On August 16, 1966 Birdie H. Fuqua, P. V. Fuqua, Jr., and Floyd Fuqua conveyed 150 acres of land out of the 200 acre tract to J. P. Fuqua in fee simple absolute; P. V. Fuqua, Jr., Floyd Fuqua, and J. P. Fuqua conveyed the remaining 50 acres to Birdie Fuqua; P. V. Fuqua, Jr. and Floyd Fuqua (appellees), together with their wives, conveyed to appellant "all of [their] future interest" in that 50 acre tract, "if any they should acquire, by gift, devise or inheritance."

4. On October 10, 1972 Birdie H. Fuqua entered into an earnest money contract with Selected Lands Corporation (SLC) for the sale of the 50 acre tract. Under the terms of this contract Mrs. Fuqua was to reserve a vendor's lien and SLC was granted a right to cancel the contract if its attorney was not satisfied with the form and content of all instruments and documents connected with the transaction.

5. On November 14, 1972 Birdie Fuqua executed a warranty deed conveying the 50 acres of land to SLC and delivered that deed to the escrow agent.

6. On November 20, 1972 Birdie Fuqua died.

7. On December 1, 1972 SLC executed a promissory note for the purchase of the property and delivered it to the escrow agent, and its attorney then approved the closing documents.

8. On January 17, 1973 the deed to SLC was filed of record.

9. On July 15, 1974 the will of Birdie Fuqua was admitted to probate.

10. On March 25, 1975 the Twelfth Judicial District Court of Grimes County entered a judgment holding that SLC was the owner of the 50 acre tract.

11. On October 15, 1975 we affirmed that judgment.

The majority opinion has focused on our earlier holding that the title of SLC relates back to the time when Mrs. Fuqua delivered the deed to the escrow agent. That is undoubtedly correct, but I do not believe it is dispositive of the current matter. The doctrines of "relation back" and "equitable conversion" are legal fictions employed to effectuate the intentions of parties to a transaction and to prevent injustice. These fictions do not preclude the application of different standards to the severed cause of action relating to the disposition of the proceeds of the transaction.

Our earlier holding does not alter, in my view, the fact that Mrs. Fuqua still owned the 50 acre tract when she died. Her rights in the property were burdened by an enforceable contract of sale, but she held *legal title* nonetheless. As our earlier opinion indicates, SLC did not acquire title until it "complied with [the] conditions of the escrow and the deed was delivered to [it]." *Fuqua v. Fuqua*, 528 S.W.2d at 898. Those events undeniably occurred *after* her death.

Upon Mrs. Fuqua's death, appellant acquired her title to the property either by her will or as a result of the deeds of expectancy from his brothers. Since he acquired the property, he is entitled to the

proceeds from its sale. If "equitable conversion" or "relation back" were to be applied, the subsequently executed note and deed of trust would stand in place of the real property which passed at the instant of Mrs. Fuqua's death.

Moreover, the claim of the other brothers to those proceeds depends upon a finding that their mother, in fact or by operation of law, had executed and delivered a deed that had been *accepted* before she died. That position cannot be correct because, irrespective of what happened after her death, the rights of the three brothers were fixed at the instant of their mother's death. *Welch v. Trustees of Robert A. Welch Foundation*, 465 S.W.2d 195, 200 (Tex.Civ.App.-Houston [1st Dist.] 1971, writ ref'd n. r. e.). Subsequent events, including the execution of the note and the delivery of the deed and its acceptance by SLC, cannot change those rights.

Finally, I differ with the majority opinion because I believe it works an injustice. As evidenced by the joint will and the family settlement executed after P. V. Fuqua, Sr.'s death, the intention and understanding of everyone involved was that J. P. Fuqua would eventually receive fee title to the entire 200 acre tract. To permit P. V. Fuqua, Jr. and Floyd Fuqua to receive two thirds of the proceeds is inherently contrary to the spirit and aim of the family settlement which followed the death of the father. Such settlements are highly favored by Texas courts. *E. g., Kellner v. Blaschke*, 334 S.W.2d 315, 320 (Tex.Civ.App.-Austin 1960, writ ref'd n. r. e.); *Wedegartner v. Reichert*, 218 S.W.2d 304 (Tex.Civ.App.-Waco 1948, writ ref'd n. r. e.).

I therefore respectfully dissent.